Jasen, J.
 

 The principal issue on this appeal is whether a provision in a truck lease agreement which requires the payment of a specified amount of money to the lessor in the event of the lessee’s breach is an enforceable liquidated damages clause, or, instead, provides for an unenforceable penalty.
 

 Defendant Puritan Farms 2nd, Inc. (Puritan), was in the business of furnishing milk and milk products to customers
 
 *421
 
 through home delivery. In January, 1969, Puritan leased a fleet of 25 new milk delivery trucks from plaintiff Truck Rent-A-Center for a term of seven years commencing January 15, 1970. Under the provisions of a truck lease and service agreement entered into by the parties, the plaintiff was to supply the trucks and make all necessary repairs. Puritan was to pay an agreed upon weekly rental fee. It was understood that the lessor would finance the purchase of the trucks through a bank, paying the prime rate of interest on the date of the loan plus 2%. The rental charges on the trucks were to be adjusted in the event of a fluctuation in the interest rate above or below specified levels. The lessee was granted the right to purchase the trucks, at any time after 12 months following commencement of the lease, by paying to the lessor the amount then due and owing on the bank loan, plus an additional $100 per truck purchased.
 

 Article 16 of the lease agreement provided that if the agreement should terminate prior to expiration of the term of the lease as a result of the lessee’s breach, the lessor would be entitled to damages, "liquidated for all purposes”, in the amount of all rents that would have come due from the date of termination to the date of normal expiration of the term less the "re-rental value” of the vehicles, which was set at 50% of the rentals that would have become due. In effect, the lessee would be obligated to pay the lessor, as a consequence of breach, one half of all rentals that would have become due had the agreement run its full course. The agreement recited that, in arriving at the settled amount of damage, "the parties hereto have considered, among other factors, Lessor’s substantial initial investment in purchasing or reconditioning for Lessee’s service the demised motor vehicles, the uncertainty of Lessor’s ability to re-enter the said vehicles, the costs to Lessor during any period the vehicles may remain idle until re-rented, or if sold, the uncertainty of the sales price and its possible attendant loss. The parties have also considered, among other factors, in so liquidating the said damages, Lessor’s saving in expenditures for gasoline, oil and other service items.”
 
 [1]
 

 
 *422
 
 The bulk of the written agreement was derived from a printed form lease which the parties modified by both filling in blank spaces and typing in alterations. The agreement also contained several typewritten indorsements which also made changes in the provisions of the printed lease. The provision for lessee’s purchase of the vehicles for the bank loan balance and $100 per vehicle was contained in one such indorsement. The liquidated damages clause was contained in the body of the printed form.
 

 Puritan tendered plaintiff a security deposit, consisting of four weeks’ rent and the lease went into effect. After nearly three years, the lessee sought to terminate the lease agreement. On December 7, 1973, Puritan wrote to the lessor complaining that the lessor had not repaired and maintained the trucks as provided in the lease agreement. Puritan stated that it had "repeatedly notified” plaintiff of these defaults, but plaintiff had not cured them. Puritan, therefore, exercised its right to terminate the agreement "without any penalty and
 
 without purchasing the trucks”.
 
 (Emphasis added.) On the date set for termination, December 14, 1973, plaintiff’s attorneys replied to Puritan by letter to advise it that plaintiff believed it had fully performed its obligations under the lease and, in the event Puritan adhered to the announced breach, would commence proceedings to obtain the liquidated damages provided for in article 16 of the agreement. Nevertheless, Puritan had its drivers return the trucks to plaintiff’s premises, where the bulk of them have remained ever since. At the time of termination, plaintiff owed $45,134.17 on the outstanding bank loan.
 

 Plaintiff followed through on its promise to commence an action for the payment of the liquidated damages. Defendant counterclaimed for the return of its security deposit. At the nonjury trial, plaintiff contended that it had fully performed
 
 *423
 
 its obligations to maintain and repair the trucks. Moreover, it was submitted, Puritan sought to cancel the lease because corporations allied with Puritan had acquired the assets, including delivery trucks, of other dairies and Puritan believed it cheaper to utilize this "shadow fleet”. The home milk delivery business was on the decline and plaintiff’s president testified that efforts to either re-rent or sell the truck fleet to other dairies had not been successful. Even with modifications in the trucks, such as the removal of the milk racks and a change in the floor of the trucks, it was not possible to lease the trucks to other industries, although a few trucks were subsequently sold. The proceeds of the sales were applied to the reduction of the bank balance. The other trucks remained at plaintiff’s premises, partially protected by a fence plaintiff erected to discourage vandals. The defendant countered with proof that plaintiff had not repaired the trucks promptly and satisfactorily.
 

 At the close of the trial, the court found, based on the evidence it found to be credible, that plaintiff had substantially performed its obligations under the lease and that defendant was not justified in terminating the agreement. Further, the court held that the provision for liquidated damages was reasonable and represented a fair estimate of actual damages which would be difficult to ascertain precisely. "The parties, at the time the agreement was entered into, considered many factors affecting damages, namely: the uncertainty of the plaintiff’s ability to re-rent the said vehicles; the plaintiff’s investment in purchasing and reconditioning the vehicles to suit the defendant’s particular purpose; the number of man hours not utilized in the non-service of the vehicles in the event of a breach; the uncertainty of reselling the vehicles in question; the uncertainty of the plaintiff’s savings or expenditures for gasoline, oil or other service items, and the amount of fluctuating interest on the bank loan.” The court calculated that plaintiff would have been entitled to $177,355.20 in rent for the period remaining in the lease and, in accordance with the liquidated damages provision, awarded plaintiff half that amount, $88,677.60. The resulting judgment was affirmed by the Appellate Division, with two Justices dissenting. (51 AD2d 786.)
 

 The primary issue before us is whether the "liquidated damages” provision is enforceable. Liquidated damages constitute the compensation which, the parties have agreed, should
 
 *424
 
 be paid in order to satisfy any loss or injury flowing from a breach of their contract.
 
 (Wirth & Hamid Fair Booking v Wirth,
 
 265 NY 214, 223.) In effect, a liquidated damage provision is an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement. (5 Williston, Contracts [3d ed], § 776, p 668.) Parties to a contract have the right to agree to such clauses, provided that the clause is neither unconscionable nor contrary to public policy.
 
 (Mosler Safe Co. v Maiden Lane Safe Deposit Co.,
 
 199 NY 479, 485.) Provisions for liquidated damage have value in those situations where it would be difficult, if not actually impossible, to calculate the amount of actual damage. In such cases, the contracting parties may agree between themselves as to the amount of damages to be paid upon breach rather than leaving that amount to the calculation of a court or jury. (14 NY Jur, Damages, § 155, pp 4-5.)
 

 On the other hand, liquidated damage provisions will not be enforced if it is against public policy to do so and public policy is firmly set against the imposition of penalties or forfeitures for which there is no statutory authority.
 
 (City of Rye v Public Serv. Mut. Ins. Co.,
 
 34 NY2d 470, 472-473.) It is plain that a provision which requires, in the event of contractual breach, the payment of a sum of money grossly disproportionate to the amount of actual damages provides for penalty and is unenforceable. (E.g.,
 
 Equitable Lbr. Corp. v IPA Land Dev. Corp.,
 
 38 NY2d 516, 521-522;
 
 Wirth & Hamid Fair Booking v Wirth,
 
 265 NY 214, 223,
 
 supra; Mosler Safe Co. v Maiden Lane Safe Deposit Co.,
 
 199 NY 479, 485,
 
 supra.)
 
 A liquidated damage provision has its basis in the principle of just compensation for loss. (Cf. Restatement, Contracts, § 339, and Comment thereon.) A clause which provides for an amount plainly disproportionate to real damage is not intended to provide fair compensation but to secure performance by the compulsion of the very disproportion. A promisor would be compelled, out of fear of economic devastation, to continue performance and his promisee, in the event of default, would reap a windfall well above actual harm sustained.
 
 (Ward v Hudson Riv. Bldg. Co.,
 
 125 NY 230, 234-235; 5 Williston, Contracts [3d ed], § 776, p 668.) As was stated eloquently long ago, to permit parties, in their unbridled discretion, to utilize penalties as damages, "would lead to the most terrible oppression in pecuniary dealings”.
 
 (Hoag v McGinnis,
 
 22 Wend 163, 166; see, also,
 
 *425
 

 Matter of Associated Gen. Contrs., N. Y. State Ch. [Savin Bros.],
 
 36 NY2d 957, 961-962 [dissenting opn].)
 

 The rule is now well established. A contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation.
 
 (City of Rye v Public Serv. Mut. Ins. Co.,
 
 34 NY2d 470, 473,
 
 supra; Wirth & Hamid Fair Booking v Wirth,
 
 265 NY 214, 223,
 
 supra; Curtis v Van Bergh,
 
 161 NY 47;
 
 Ward v Hudson Riv. Bldg. Co.,
 
 125 NY 230,
 
 supra;
 
 Restatement, Contracts, § 339.) If, however, the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced.
 
 (Equitable Lbr. Co. v IPA Land Dev. Corp.,
 
 38 NY2d 516, 521-522,
 
 supra; Seidlitz v Auerbach,
 
 230 NY 167, 172-173; 14 NY Jur, Damages, § 155.) In interpreting a provision fixing damages, it is not material whether the parties themselves have chosen to call the provision one for "liquidated damages”, as in this case, or have styled it as a penalty. (E.g.,
 
 Wirth & Hamid Fair Booking v Wirth,
 
 265 NY 214, 225,
 
 supra; Ward v Hudson Riv. Bldg. Co.,
 
 125 NY 230, 234,
 
 supra.)
 
 Such an approach would put too much faith in form and too little in substance. Similarly, the agreement should be interpreted as of the date of its making and not as of the date of its breach. (E.g.,
 
 Seidlitz v Auerbach,
 
 230 NY 167, 172,
 
 supra.)
 

 In applying these principles to the case before us, we conclude that the amount stipulated by the parties as damages bears a reasonable relation to the amount of probable actual harm and is not a penalty. Hence, the provision is enforceable and the order of the Appellate Division should be affirmed.
 

 Looking forward from the date of the lease, the parties could reasonably conclude, as they did, that there might not be an actual market for the sale or re-rental of these specialized vehicles in the event of the lessee’s breach. To be sure, plaintiffs lost profit could readily be measured by the amount of the weekly rental fee. However, it was permissible for the parties, in advance, to agree that the re-rental or sale value of the vehicles would be 50% of the weekly rental. Since there was uncertainty as to whether the trucks could be re-rented or sold, the parties could reasonably set, as they did, the value of such mitigation at 50% of the amount the lessee was obligated to pay for rental of the trucks. This would take into
 
 *426
 
 consideration the fact that, after being used by the lessee, the vehicles would no longer be "shiny, new trucks”, but would be used, possibly battered, trucks, whose value would have declined appreciably. The parties also considered the fact that, although plaintiff, in the event of Puritan’s breach, might be spared repair and maintenance costs necessitated by Puritan’s use of the trucks, plaintiff would have to assume the cost of storing and maintaining trucks idled by Puritan’s refusal to use them. Further, it was by no means certain, at the time of the contract, that lessee would peacefully return the trucks to the lessor after lessee had breached the contract.
 

 With particular reference to the dissent at the Appellate Division, it is true that the lessee might have exercised an option to purchase the trucks. However, lessee would not be purchasing 25 "shiny, new trucks” for a mere $2,500. Rather, lessee, after the passage of one year from the commencement of the term, could have purchased trucks that had been used for at least one year for the amount outstanding on the bank loan, in addition to the $2,500. Of course, the purchase price would be greater if the option were exercised early in the term rather than towards the end of the term since plaintiff would be making payments to the bank all the while.
 
 [2]
 
 More fundamental, the existence of the option clause has absolutely no bearing on the validity of the discrete, liquidated damages provision. The lessee could have elected to purchase the trucks but elected not to do so. In fact, the lessee’s letter of termination made a point of the fact that the lessee did not want to purchase the trucks. The reality is that the lessee sought, by its wrongful termination of the lease, to evade all obligations to the plaintiff, whether for rent or for the agreed upon purchase price. Its effort to do so failed. That lessee could have made a better bargin for itself by purchasing the trucks for $48,134.17
 
 [3]
 
 pursuant to the option, instead of paying $92,341.79 in damages for wrongful breach of the lease is not availing to it now. Although the lessee might now wish, with the benefit of hindsight, that it had purchased the trucks rather than default on its lease obligations, the simple fact is that it did not do so.
 

 We attach no significance to the fact that the liquidated
 
 *427
 
 damages clause appears on the preprinted form portion of the agreement. The agreement was fully negotiated and the provisions of the form, in many other respects, were amended. There is no indication of any disparity of bargaining power or of unconscionability. The provision for liquidated damages related reasonably to potential harm that was difficult to estimate and did not constitute a disguised penalty. We also find no merit in the claim of trial error advanced by Puritan.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order affirmed.
 

 [1]
 

 . The text of article 16 of the lease, in pertinent part, reads as follows:
 

 "16. Upon termination of this agreement, * * * Lessor * * * shall be entitled to damages, herein liquidated for all purposes * * * as follows:
 

 "(a) The sum of all rents designated as 'Fixed Rental Charges’ which would have become due under the normal operation of this agreement from the date of the said termination * * * including any effective renewal period; less
 

 
 *422
 
 "(b) The re-rental value of said motor vehicles which is hereby agreed upon as fifty per cent (50%) of the sum of such 'Fixed Rental Charges’ as are set forth in subdivision '(a)’ of this article.
 

 "In arriving at said liquidated damages, the parties hereto have considered, among other factors, Lessor’s substantial * * * investment in purchasing or reconditioning for Lessee’s service the demised motor vehicles, the uncertainty of Lessor’s ability to re-enter the said vehicles, the
 
 costs to
 
 Lessor during any period the vehicles may remain idle until re-rented, or if sold, the uncertainty of the sales price and its possible attendant loss. The parties have also considered, among other factors, in so liquidating the said damages, Lessor’s saving in expenditures for gasoline, oil and other service items.”
 

 [2]
 

 . According to the lease agreement, the amount of plaintiffs bank loan payments were not to vary and interest and amortization were to be constant.
 

 [3]
 

 . This sum represents the $45,634.17 still owed by plaintiff on the bank loan, plus $2,500 ($100 for each of the 25 trucks).