## SYNCSORT, INC. *v.* INDATA SERVICES ET AL. (5648)

BIELUCH, O'CONNELL and FOTI, Js.

Argued January 19—decision released May 24, 1988

*Robert L. Teicher,* for the appellant (named defendant).

*Judith H. Rothschield,* with whom, on the brief, was *M. Jeffry Spahr,* for the appellee (plaintiff).

O'CONNELL, J. This is the defendant's appeal from a judgment rendered in the plaintiff's favor in an action concerning a computer program licensing agreement. The case was tried to the court on a written stipulation of facts, of which the following are relevant to disposition of this appeal. On March 14, 1984, the plaintiff installed a computer program, Sydoc, in the defendant's office. In late April of 1984, the defendant licensee

signed a three year license agreement and schedule pertaining thereto. By its terms, the agreement became effective upon acceptance by the plaintiff licensor. This acceptance occurred on May 3, 1984, fifty days after the installation date. The agreement called for licensing fees of $4300 the first year and $6300 each for the second and third years, for a total fee of $16,900.

The agreement also established a sixty day acceptance period during which the defendant could terminate the license without financial obligation. The acceptance period was defined as commencing on the date of installation. In the event of termination, a licensee was required "promptly [to] certify to [the plaintiff] in writing that [the] licensee has permanently eliminated the product from its computers, tapes, disks or any other data storage media and that licensee has ceased the use of the product." The license agreement consisted of standardized language contained in the plaintiff's preprinted forms.

On May 31, 1984, the plaintiff sent the defendant an invoice for $4300. On June 26, 1984, the defendant informed the plaintiff by letter that it was terminating the agreement and certified that it would permanently eliminate the plaintiff's program from its computer storage media.[1] On or after June 26, 1984, the defendant returned the use manuals and tape to the plaintiff.

Shortly after receipt of this letter, the plaintiff informed the defendant that the letter was not being accepted as a termination of the license agreement. On

[1] The defendant's letter of June 26, 1984, incorporated into the parties' stipulation of facts, read as follows:
"Mr. Jeffrey Michals
SYNCSORT INC.
560 Sylvan Avenue
Englewood Cliffs, NJ 07632
Dear Jeff:
    At this time I have to inform you that INDATA will terminate its' initial license agreement for your product 'SYDOC'. I understand that we have

October 16, 1984, the plaintiff sent the defendant a statement of account for the $4300 first payment, and on April 30, 1985, an invoice for the $6300 second payment. None of the amounts claimed by the plaintiff has been paid by the defendant.

On October 9, 1985, the plaintiff commenced this action claiming to have accelerated the payment of the entire $16,900 due under the contract because of the defendant's alleged default. Such acceleration was allowed under the contract, upon termination of the agreement by the plaintiff. The plaintiff never terminated the contract, however, but instead treated it as ongoing and billed the defendant for payments as they came due. The case was tried on a six count amended complaint containing a prayer for relief seeking "specific performance of the License Agreement and License Schedule."[2]

The trial court found "that the plaintiff is properly entitled to the entire amount due, plus attorney's fees in the amount of $2609.50 and costs."[3]

The defendant appeals claiming that the court erred (1) in ruling that the plaintiff was entitled to accelerate the fees due for the full term of the license agreement, (2) in ruling that time was of the essence in connection with the cancellation set forth in paragraph

the right to do so within 60 days with no financial obligations.

Since we have had your product installed, we have used it only once. I can not justify the expense of this product when our usage is so low.

In agreement with your termination policy, I wil scratch all 'SYDOC' libraries and return all manuals and tapes.

Sincerely,
John J. Waranis"

[2] The plaintiff indicated at oral argument that although the prayer for relief also requested money damages, the primary interest of the plaintiff was in specific performance.

[3] The court found the individual defendant, president of the defendant corporation, was acting as agent for a disclosed principal and was therefore not liable to the plaintiff.

fourteen of the license agreement, (3) in ruling that the cancellation deadline under paragraph fourteen of the license agreement was not ambiguous, (4) in refusing to find an implied term in the license agreement that the cancellation period under paragraph fourteen was to commence on April 30, 1984, (5) in ruling that the license agreement was not divisible, and (6) in awarding attorney's fees to the plaintiff. We find error.

We first note that by bringing an equitable action for specific performance the plaintiff brings all principles of equity into consideration, not merely those raised by the parties. See 27 Am. Jur. 2d, Equity §§ 103, 105, and cases cited therein. The licensing agreement provided that its validity, construction and interpretation would be governed by the laws of the state of New York. This does not interfere with the application of equitable principles, however, because § 1-103 of the New York Uniform Commercial Code expressly provides: "Unless displaced by particular provisions of this title, the principles of law and . . . *equity* supplement its provisions." (Emphasis added.)[4] See *Trowbridge* v. *Malix Realty Co.,* 198 App. Div. 656, 191 N.Y.S. 97 (1921); *Caspert* v. *Anderson Apartments, Inc.,* 196 Misc. 555, 94 N.Y.S.2d 521 (1949). Contract clauses which require the application of the laws of other states upon breach or dispute are recognized as proper in Connecticut. *Gannett Co., Inc.* v. *Register Pub. Co.,* 428 F. Sup. 818 (D.C. Conn. 1977); see also General Statutes § 42a-1-105 (1).

Although the defendant was in possession of the computer program materials for only a small fraction of one year, the plaintiff seeks to recover payments for all three years of the agreement, notwithstanding the

---

[4] The New York statute is identical to Connecticut General Statutes § 42a-1-103.

fact that all materials had been returned to the plaintiff and were therefore available for license to others. The defendant had in fact used the product only once.[5]

It is readily apparent that requiring the defendant to pay three years license fees for a program which, by stipulation, was used only once and then returned, would result in an unconscionable windfall for the plaintiff. The situation is analogous to litigation concerning liquidated damage clauses which purport to allow one party to retain a disproportionately large deposit following a contract breach. New York courts have long refused to enforce liquidated damage clauses when to do so would allow a seller to be unjustly enriched by retaining, as damages, money vastly exceeding the loss suffered. See *Truck Rent-A-Center, Inc.* v. *Puritan*, 41 N.Y.2d 420, 426–27, 361 N.E.2d 1015, 393 N.Y.S.2d 365 (1977); 36 N.Y. Jur. 2d, Damages § 154 et seq. In the present case, however, the trial court did not address the matter of whether the liquidated damages clause in the contract in question was "so exorbitant as to be in the nature of a penalty." *P.J. Carlin Construction Co.* v. *New York*, 59 App. Div. 2d 847, 848, 399 N.Y.S.2d 13 (1977). We determine that this issue is dispositive of the appeal, and find that the clause in question did create a penalty upon breach, and as such was unenforceable. *Truck Rent-A-Center, Inc.* v. *Puritan,* supra.

"Generally, where a contract contains a liquidated damages clause, the party seeking to repudiate that clause must show that the agreed damage is so exorbitant as to be in the nature of penalty." *P.J. Carlin Construction Co.* v. *New York*, supra. The defendant has sustained its burden of proof by showing, inter alia, that it retained the program for only two months, was allowed only ten days after the plaintiff's approval of the license agreement in which to cancel without obligation, and had used the program only once. Under

---

[5] See footnote 1, supra.

these circumstances, the trial court erred in finding the defendant liable for the entire amount due under the contract, and in failing to weigh the equities of the case before it. Under New York law, "the granting of relief by a decree requiring specific performance of a contract rests in the sound discretion of the court before which the application is made, which discretion is to be exercised upon a consideration of all the circumstances of the case." (Footnotes omitted.) 55 N.Y. Jur., Specific Performance § 5, pp. 435–36 and cases cited therein. It is a settled principle of appellate law generally, and of the law of New York in particular, that the exercise of judicial discretion ordinarily will not be interfered with on appeal. *Nitz* v. *Prudential-Bache Securities, Inc.,* 102 App. Div. 2d 914, 915, 477 N.Y.S.2d 479 (1984); *Rosen Trust* v. *Rosen,* 53 App. Div. 2d 342, 366, 386 N.Y.S.2d 491 (1976); see also *Sturman* v. *Socha,* 191 Conn. 1, 7, 463 A.2d 527 (1983); *DeSantis* v. *Piccadilly Land Corporation,* 3 Conn. App. 310, 315–16, 487 A.2d 1110 (1985). It is also a well established principle of New York law, however, that specific performance should not be ordered when enforcement of the contract will beget an inequitable result. "[O]ne of the general rules formulated and followed is that this equitable relief will not be granted if, under the circumstances, either because of the inequitable character of the contract or other reason, the result of the specific enforcement of the contract would be harsh, inequitable, oppressive, or unconscionable." (Footnote omitted.) 55 N.Y. Jur., Specific Performance § 34 and cases cited therein. An examination of the equities would have shown that the plaintiff is not seeking recovery for the use of its product but is seeking to impose an unconscionable penalty upon the defendant for its election not to proceed with the contract.[6]

---

[6] We further note that the plaintiff's claim for money damages under the liquidated damages clause would also fail, as the defendants have met their

There is error, the judgment is set aside and the case is remanded with direction to render judgment in favor of the defendant.

In this opinion the other judges concurred.

burden of proving that the payment required under the clause would be "so exorbitant as to be in the nature of a penalty." *P.J. Carlin Construction Co.* v. *City of New York,* 59 App. Div. 2d 847, 399 N.Y.S.2d 13, 14 (1977); *Truck Rent-A-Center* v. *Puritan,* 41 N.Y.2d 420, 361 N.E.2d 1015, 393 N.Y.S.2d 365 (1977). See footnote 2, supra.