OPINION OF THE COURT
Matthew J. Vitanza, J.
The plaintiff sues the defendant claiming that the defendant owes the plaintiff $2,800 in fines imposed by the trial board of the plaintiff, Local Union 325 of the International Brotherhood of Electrical Workers. Richard McPherson, who prosecuted the case before the trial board, also presented the plaintiff’s claim herein.
There is no question that the defendant had been a member of the plaintiff union. The plaintiff introduced into evidence, as exhibit A, minutes of the union meeting of September 21, 1981, which stated the defendant was approved for membership and given a copy of the constitution, bylaws and the union agreement. He signed the minutes acknowledging he would be bound by the documents. The defendant informed the court that in 1993 he was project coordinator for Mateo Electric. At that time, the defendant asked to be terminated from Mateo because he wanted to go into business for himself. According to defendant, it was a well-known fact that he wanted to go into business for himself. Defendant did go into business for himself in 1993 and Mateo Electric was the defendant’s last union employment.
According to Mr. McPherson, the defendant continued to pay his dues and came to the union hall and signed the referral book after the defendant left Mateo Electric. When any union member seeks union employment, the unemployed member signs the book every 30 days to indicate he is available for union employment. The defendant signed the book from June 29, 1993 until August 27, 1993.
Mr. Kelly was suspended on June 30, 1995, for failing to pay the $64.35 quarterly dues by March 30, 1995. The defendant was sent a letter on July 6, 1995, informing him that he had been suspended as of June 30, 1995. He was informed that, pursuant to article XXIII of their constitution, any member *938 who was in arrears of three months but less than six months could be reinstated upon repayment. The letter also told defendant the amount of money he would have to pay in order to be reinstated. When the defendant failed to pay the specified amount by September 30, 1995, he was terminated from membership.
On September 20, 1995, the recording secretary, John Finn, wrote to the defendant notifying him that defendant was to appear before the trial board of Local Union No. 325 I.B.E.W. at 24 Emma Street, Binghamton, New York, on October 2, 1995, at 7:00 p.m. to answer charges filed by Richard McPherson for alleged violations of article 2, § 1 of Local 325 I.B.E.W. agreement and article XXVI, § 1 (1), (5), (7) of the I.B.E.W. constitution. Enclosed with the letter was a copy of the original charges. The defendant was informed that he could bring witnesses to give evidence on his behalf. The defendant was further informed that the defendant would be given an opportunity to cross-examine any of the complainant’s witnesses and if he desired, the defendant could bring an I.B.E.W. member to act as his counsel.
The defendant did not appear at the October 2, 1995 meeting of the trial board. On October 3, 1995, by letter from recording secretary John Finn, the defendant was informed that the trial board, after due consideration, found the defendant guilty of a violation of Local 325 I.B.E.W. agreement and constitution as follows:
(Fine) Assessed
Agreement - article 2, § 1 $700
Constitution - article 26, § 1 (1) $700
Constitution - article 26, § 1 (5) $700
Constitution - article 26, § 1 (7) $700
The defendant was advised of his right to appeal within 45 days but the defendant did not appeal. The above four charges are discussed in more detail later in this decision.
The defendant argues that the plaintiff was aware of when defendant terminated employment with Mateo Electric and the reason why, i.e., to start his own business. More specifically, the defendant signed the employment book for two months but when he went to the union hall to sign it for the *939 third month, the defendant was confronted by Walter Harvey who had one of the defendant’s business cards and who asked defendant what was going on. Mr. Harvey informed the defendant that they would like to work things out, i.e., the union wanted to have defendant sign on as a union employer. The defendant informed him that defendant did not think that it was financially possible for defendant to meet union scale (wages). Nevertheless, the defendant remained a union member and continued to pay dues until the dues owed for the March 30, 1995 quarter, even though he received no benefits from the plaintiff after he left Mateo Electric.
The defendant states that he did not know that he could be fined. However, the defendant admits he was told that they (the union) would like to have his company in the local. The defendant also recalls being told that if something does not happen, the union will have to charge him. Moreover, the defendant states that Mr. McPherson told him at that time that if the defendant wanted to go into business, he should have stopped paying his dues. According to the defendant, this conversation took place shortly before the union charged him.
The defendant admits that he never notified the union that he was resigning from the union even though he was not looking for further involvement with the union when he went into business for himself. Nevertheless, when he was sent the letter that he was being charged and notified of the hearing before the trial board, the defendant did not feel that he was still a union member. It was his opinion that he should not be judged by an organization that he was not a part of.
The relationship between a member and his union is built upon a contract. More specifically, "[t]he constitution and bylaws of an unincorporated association [union] express the terms of a contract which define the privileges secured and the duties assumed by those who have become members.” (Polin v Kaplan, 257 NY 277, 281 [1931]; see also, art XXI, § 3 of plaintiff’s constitution.) While the union and member may include disciplinary measures within that contract, the court will review such measures to determine if they conflict with other terms of the contract or with statutory /common law. (Polin v Kaplan, supra.)
Although the defendant testified that he was unaware that he could be fined, the defendant did acknowledge and did subscribe to the constitution and rules as shown by the minutes of the September 21, 1991 meeting of Local Union 325 I.B.E.W. By defendant’s acknowledgment and subscription, in accepting *940 union membership, he is conclusively presumed to know the contents. (Imero Florentino Assocs. v Green, 85 AD2d 419 [1st Dept 1982]; see also, Myers v Hinton, 143 Misc 2d 683 [App Term, 2d Dept 1989].) Accordingly, the defendant is deemed to be aware of the disciplinary measures that may be taken by the plaintiff. (Myers v Hinton, supra.) One of the provisions of the constitution for which defendant is deemed to have knowledge is article XXVI. Said article XXVI states the following: "Any member convicted of any one or more of the above-named offenses may be assessed or suspended or both, or expelled.” The court is of the opinion that the word "assessed” as used in the constitution means "fined”, and that the plaintiff has the right to impose such fines.
The evidence supports the court’s finding that the imposition of a fine upon defendant was reached and accomplished within the criteria of 29 USC § 411 (a) (5). The defendant was "(A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.” (29 USC § 411 [a] [5].) While the court will not interfere with the internal procedures of the union (Scofield v National Labor Relations Bd., 394 US 423 [1969]) and the court will not review the substantive acts of the defendant which result in the imposing of the fine (Polin v Kaplan, supra), the court will, as stated above, test the procedure and format of the charges to determine that they are within the scope of the contract and the law:
The defendant argues that the union’s proceedings are invalid because he ceased to be a member prior to the violations. Defendant argues that his membership should be deemed to have ceased June 29, 1993, when he terminated his (union-based) employment to become an employer and opened his own business. Moreover, defendant states that the union knew of his activities on June 29, 1993 and at all times subsequent. Defendant also argues that he neither received union benefits nor participated in the union even though he continued to pay his dues.
The court rejects defendant’s argument of termination of membership as being against the evidence. The fact that defendant became an employer does not end membership because article XVI, § 5 of the constitution expressly allows defendant to continue his membership in such situation. The fact that defendant neither received benefits nor participated in the union is evidence of defendant’s personal decision to be an inactive member but he still remained a member. More importantly, *941 defendant continued to pay his dues which is tantamount of a reaffirmation of membership. If defendant wanted to leave the union, he should have either clearly resigned or stopped paying his dues. (Failure to pay dues would have resulted in expulsion; see, art XXII, § 4.)
The defendant argues that the charges were not brought within the 60-day time limit of article XXVI, § 4 of the constitution. Said provision directs that charges must be- submitted "within sixty (60) days of the time the charging party first became aware, or reasonably should have been aware, of the alleged act or acts.” The test of "knowledge” is that of Richard M. McPherson, the charging member, and not that of any other person in the union and the defendant carries the burden of proof on this test. Furthermore, the defendant engaged in a recurring act in that each day he maintained his business was a new cause or event for the violation to start the 60-day time limit. (75 NY Jur 2d, Limitations and Laches, §§175, 204.) The court finds that defendant did not satisfy his burden of proof and that the charges were timely submitted.
The defendant argues that his inability to engage an attorney-at-law for the hearing violated his rights of due process. Article XIV, § 5 directs that the accused (i.e., the defendant) in any disciplinary hearing is to "be allowed an I.B.E.W. member to represent him”. The constitution does not dictate who that member must be. Presumably this representation may be by a member who may or may not also be an attorney-at-law. Nevertheless, the defendant cites Matter of Reale v Patrolmen’s Benevolent Assn. N. Y. City Tr. Police Dept. (109 Misc 2d 876 [Sup Ct, NY County 1981]) to support defendant’s right to independent counsel. Even though Matter of Reale (supra) was reversed on other grounds (Matter of Reale v Patrolmen’s Benevolent Assn. of N. Y. City Tr. Police Dept., 90 AD2d 755 [1st Dept 1982]), this court considers the Supreme Court’s decision in Matter of Reale (109 Misc 2d 876, supra) to be limited by its facts and thus is inapplicable to this case.
In Matter of Reale (supra), the union president was to appoint a member of the executive committee to be counsel to the accused and it was the executive committee that had decided if the charges required a trial. The Reale court wrote: "Under such circumstances, there is an inherent unfairness in permitting the president to appoint defense counsel, as well as the prosecuting attorney, and in permitting the selection to be made from the committee which determined that the charges in question were sufficient to warrant a trial. Under such cir *942 cumstances, the right of a member to be heard would be of little value if the accused is not permitted to select his or her own counsel.” (Matter of Reale v Policemen’s Benevolent Assn. N. Y. City Tr. Police Dept., 109 Misc 2d, supra, at 880.) In the case before this court, neither the union nor any officer or any other member may select a person to assist the accused; such selection is done by the accused (defendant). Furthermore, in a private organization, the parties may restrict by contract (i.e., constitution) the right of an accused to engage independent, outside counsel for an internal hearing by the private organization. (Matter of Beilis v Albany Med. Coll., 136 AD2d 42 [3d Dept 1988].) The court holds that defendant has not proven that his inability to engage a nonmember attorney-at-law infringed upon his due process.
With respect to the format of the proceedings, four charges were lodged against defendant and the defendant was found guilty of each of the four charges. More specifically, the trial board found defendant guilty of article 2, § 1 of the construction agreement between Local Union No. 325 I.B.E.W. and Southern Tier Chapter of NECA, which provides as follows: "No member of Local Union No. 325 while he remains subject to employment by Employers operating under this Agreement shall himself become a contractor for the performance of any Electrical work.” The trial board also found defendant guilty of the following provision of the constitution, article XXVI misconduct, offenses and penalties:
"Sec. 1. Any member may be penalized for committing any one or more of the following offenses:
"(1) Violation of any provision of this Constitution and the rules herein, or the bylaws, working agreements, or rules of a L.U. * * *
"(5) Engaging in any act or acts which are contrary to the member’s responsibility toward the I.B.E.W., or any of its L.U.’s, as an institution, or which interfere with the performance by the I.B.E.W. or a L.U. with its legal or contractual obligations * * *
"(7) Wronging a member of the I.B.E.W. by any act or acts (other than the expression of views or opinions) causing him physical or economic harm.”
The court holds that the violation of the construction agreement does not apply to defendant. It appears that a purpose of section 1 of the construction agreement is to protect contractors from paying compensation for employment of *943 union members who also, at the same time, compete for business as another contractor. The court holds that section 1 of the construction agreement does not apply to defendant because there is no proof that defendant worked for contractors covered by said construction agreement. The defendant is not subject to the construction agreement until the defendant accepted employment from any of the contractors who is a party to said agreement. The court holds that the fine against the defendant for violating section 1 will not be enforced.
The court finds that section 1 (1) of the above-quoted constitution refers to other provisions of the constitution and rules rather than a description of a prohibitive act or conduct which a member is to avoid. Accordingly, the imposition of a fine for this subsection would be a duplication of the fines levied for the other two violations of the constitution which are charged. Indeed, sections 5 and 7 of article XXVI do describe acts for which a violation would support the imposition of a fine. The court accepts the plaintiff’s decision that defendant violated said sections 5 and 7.
The defendant argues that the $700 fine for each charge is unreasonable and unenforceable. The court agrees with defendant’s argument that the amount of the fine is unreasonable. "Issues as to the reasonableness or unreasonableness of such fines must be decided upon the basis of the law of contracts, voluntary associations, or such other principles of law as may be applied in a forum competent to adjudicate the issue. Under our holding, state courts will be wholly free to apply state law to such issues at the suit of either the union or the member fined.” (National Labor Relations Bd. v Boeing Co., 412 US 67, 74 [1973].) While the constitution places no restrictions or limits on the size of the fine, common law does.
Since the imposition of a fine arises out of a breach of contract, the law of contracts with respect to damages will apply. In New York, there can be no punitive damages awarded for breach of contract. (Vanderburgh v Porter Sheet Metal, 86 AD2d 688 [3d Dept 1982].) Therefore, the type of damages recoverable for breach of contract is either compensatory or a previously agreed upon sum as liquidated damages. Because the plaintiff offered no proof as to the actual economic loss caused by defendant’s acts, the validity of the amount of the fine is to be tested by the rules of liquidated damages.
The parties may agree between themselves to a definite amount to be deemed damages (i.e., liquidated) when the actual loss is incapable or difficult to estimate with any precision. *944 However, mere agreement by the parties is not sufficient. Before a court will enforce a provision for liquidated damages, the court must also find that the dollar amount is not unreasonable or disproportionate to the probable loss. (Truck Rent-A-Center v Puritan Farms 2nd, 41 NY2d 420 [1977].) The court notes that the plaintiff has not proven that the $700 amount bears any reasonable or proportionate relationship to a loss incurred by the union. More importantly, there is no preexisting agreement between the parties as to amount of fine or as to criteria to fix the amount, such as a schedule of varying amounts for different violations. The court holds the $700 fines for violations of article XXVI, § 1 (5) and (7), respectively, to be arbitrary and unreasonable. The court will not enforce said fines.
The court denies and dismisses the claims of plaintiff against defendant.