OPINION OF THE COURT
Thomas A. Stander, J.
The defendants, E & L Piping, Inc. and Fidelity & Deposit Company of Maryland (collectively E & L), submit a motion seeking an order granting the defendants partial summary judgment dismissing plaintiff City of Rochester’s first cause of action in its second amended complaint. The first cause *573 of action in the plaintiffs second amended complaint is for breach of contract by failing to satisfy Minority and Women Business Enterprise Utilization Plan (M/WBE) requirements. Plaintiff alleges that E & L breached the contract by failing to adhere to the M/WBE plan when E & L did not hire enough African-American-owned and women-owned subcontractors.
The defendants seek summary judgment dismissing the first cause of action on the grounds that the M/WBE plan of the City of Rochester is unconstitutional; in the alternative, that the M/WBE plan expired in accordance with the terms of its enabling statute which never authorized a penalty; and, in the alternative, that the liquidated damages provision is an unenforceable penalty.
Facts
E & L Piping entered into a contract with the City on August 16, 1996 to be the prime contractor on the Rochester War Memorial renovation project to perform heating, ventilation and air-conditioning. E & L was terminated from the contract on March 19, 1999.
The contract between E & L and the City required the contractor, in this case E & L Piping, to comply with the City and state M/WBE utilization requirements and goals (see defendants’ exhibit book, exhibit A, at SLR 51, D). The contract provision states: “Contactor [sic] failure to meet the requirements could jeopardize the award of the contract” (id. at SLR 51, Notice). The M/WBE plan is a race, ethnic and gender-based set-aside program which established goals for certain percentages of a total contract bid to be subcontracted to minority-owned businesses (see defendants’ exhibit book, exhibit A, at SLR 51-52). The goal for African-American-owned businesses established in the contract was 8.45% and the goal for women-owned businesses was 8% (id. at SLR 51, M/WBE Utilization Requirements and Goals).
The contract contains the “M/WBE Utilization Requirement, City of Rochester Minority and Women Business Enterprise (M/WBE) Utilization Goal Construction Set-Asides” (defendants’ exhibit book, exhibit A at SLR 52-91). The policy statement of this utilization requirement indicates, among other things, that the “City Council Ordinance 92-326 authorizes a policy of affirmative action toward contractors” in certain specified ethnic and gender groups in the Rochester area. The requirements then detail what is required by the contractor to comply with the M/WBE utilization requirements. *574 The successful bidder’s “Proposed Goal” for meeting these requirements “shall be incorporated into the contract” and further the subcontractors listed on a form, dollar amounts shown, and other relevant documentation “shall become part of the prime’s contract with the City” (id., at SLR 57, 5).
Under the terms of this utilization requirement, there are clauses addressing liquidated damages and a penalty for noncompliance (id., at SLR 58, 10, 11; SLR 62, 12.10). The liquidated damage clauses and penalty clause in the plan state:
“10. Liquidated Damages
“The City of Rochester recognizes the necessity of correcting the effects of discrimination in City procurement, and that the socio-economic benefits of this program are large but immeasurable. Failure to comply with the MAYBE utilization requirements in this contract would cause damages reaching beyond ascertainable monetary values. Therefore, the City of Rochester and the contractor agree to the sum of 125% of the percentage of the contract which is equal to the MAYBE utilization requirement, or the amount specified in the contract award, as liquidated damages for the contractor’s failure to comply with the Approved M/WBE Utilization Plan included in this contract. The liquidated damages imposed shall be 125% of any shortfall of the Approved MAYBE Utilization Plan. Liquidated damages will be imposed unless the contractor, after a good faith effort, is unable to obtain a waiver based on the lack of any available or qualified MAYBE’s with competitive pricing, as defined herein.
“11. Penalty for Non-Compliance
“If the City finds a consistent pattern of MAYBE shortfalls by a contractor or determines that a contractor has failed to demonstrate a good faith effort to obtain MAYBE’s for this and/or other contracts, the City may declare the contractor a non-responsible bidder and reject any bids by the contractor on future City contracts.
“12. Waivers
“12.10 Liquidated damages shall be assessed against the contractor at one hundred twenty-five percent (125%) of the nonwaived M/WBE shortfall.”
These contract provisions setting forth the MAYBE utilization *575 requirements for the City are generally authorized by City Council Ordinance 92-326, entitled “Adoption of a Minority/ Women Business Enterprise Program For Public Works,” which was passed August 11, 1992.
The specifics included in the contract are promulgated by the City in accordance with the authorization of the City ordinance. This ordinance establishes the M/WBE program which is designed to end discrimination and remedy its effects. The ordinance sets forth percentages of dollars as goals for work to be performed by M/WBEs for each fiscal year of the program and authorizes the director of finance to establish rules and regulations for the administration of the program. The ordinance directs that all goals would be reevaluated and adjusted each year. This ordinance establishing the M/WBE program for public works remained in effect through June 30, 1997.
I. Liquidated Damages
The defendants, E & L, seek summary judgment dismissing the plaintiff’s first cause of action on the ground, among others, that the contractual remedy of liquidated damages for a breach of the M/WBE plan is an unenforceable penalty. The plaintiff, City of Rochester, asserts that there is a valid liquidated damages provision and a separate clause setting forth a penalty for noncompliance.
A. Law
The courts have established the general legal principles that apply to a liquidated damages clause in a contract:
“The rule is now well established. A contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation. If, however, the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced. In interpreting a provision fixing damages, it is not material whether the parties themselves have chosen to call the provision one for liquidated damages’, as in this case, or have styled it as a penalty. Such an approach would put too much faith in form and too little in substance. Similarly, the agreement should be interpreted as of the date of its making and not as of the date of its breach.” (Truck Rent-A-Center v Puritan Farms 2nd, 41 *576 NY2d 420, 425 [1977] [citations omitted]; see Fingerlakes Chiropractic v Maggio, 269 AD2d 790 [4th Dept 2000]; Benderson v Poss, 142 AD2d 937 [4th Dept 1988]; Pyramid Ctrs. & Co. v Kinney Shoe Corp., 244 AD2d 625 [3d Dept 1997].)
B. Contract Clause For Liquidated Damages
The issue on this motion is whether the liquidated damages clause set forth in the parties’ contract is enforceable. Applying the general legal principles adopted by the New York courts, the provision in the agreement denoted “Liquidated Damages” fixing damages in the event of a breach is plainly, and grossly, disproportionate to the probable actual harm or loss. This contract provision is a penalty and will not be enforced.
“A liquidated damage provision has its basis in the principle of just compensation for loss” (Truck Rent-A-Center at 424). The sum of money agreed to by contracting parties, in the event of a breach, must constitute an amount sufficient to satisfy for actual loss or injury flowing from such breach.
“A clause which provides for an amount plainly disproportionate to real damage is not intended to provide fair compensation but to secure performance by the compulsion of the very disproportion. A promisor would be compelled, out of fear of economic devastation, to continue performance and his [or her] promisee, in the event of default, would reap a windfall well above actual harm sustained.” (Truck Rent-A-Center at 424 [citations omitted].)
The City has failed to demonstrate any probable actual damages, at the time the parties entered into their agreement, that would justify, in the event of a breach, the sum allowed under the liquidated damages provision. The contractual provision for damages in the sum of 125% of any shortfall of the approved M/WBE utilization plan is not an estimate of the extent of injury that would be suffered by the City. The plan does not set forth any probable actual damages or the extent of the injury to the City if the goals are not met.[1] In addition, the resolution authorizing the M/WBE plan provides only that the *577 contractor shall be disqualified as the low bidder; there is no authorization for liquidated damages.
Further, liquidated damages are not supported by the testimony of the City’s own employees. The person who determined whether there has been a violation of the M/WBE plan, the purchasing agent of the City, Jesse Dudley, testified that the 125% of the shortfall due for failure to comply is a penalty and not liquidated damages (Dudley deposition, defendant’s exhibit H, at 44-47). The M/WBE officer, Michael Tyler, testified he did not know why the assessment of 125% was selected, nor who selected that number (Tyler deposition, defendant’s exhibit G, at 90-91). Neither of the City employees charged with enforcing the M/WBE plan goals could articulate any reason or basis for the particular calculation of damages nor specify the damages caused to the City if a prime contractor failed to satisfy the requirements. The affidavit of Vincent Carfagna, director of finance for the City,[2] states that the purpose of the liquidated damages provision for violation of the M/WBE “was to correct and/or ease effects of past discrimination and to assist in correcting future discrimination” (affidavit of Carfagna, Mar. 28, 2003, fi 10). The City’s director of finance asserts that the purpose of the damages clause is to achieve a public good and “corrects past harm to citizens of the City” who are minority and women-owned contractors that have suffered through past discrimination (id. fifi 10, 11).
The argument offered by the City that the liquidated damages clause was intended to compensate an abstract loss for past discrimination and to achieve a public benefit is insufficient to show that this is an enforceable liquidated damages clause. Instead the evidence presented and the language of the liquidated damages clause demonstrates that the amount fixed is plainly disproportionate to the probable loss to the City and therefore, it is an unenforceable penalty clause.
The defendants have set forth evidence sufficient to warrant partial summary judgment in their favor dismissing the first cause of action set forth in the complaint. The plaintiff, City, has failed to establish an issue of fact requiring a trial. The motion by the defendants for partial summary judgment dismissing the plaintiff’s first cause of action on the ground that the liquidated damages provision is an unenforceable penalty is granted.
*578 II. Other Basis For Dismissing the First Cause of Action
The defendants also assert as alternative grounds for partial summary judgment dismissing plaintiffs breach of contract claim that the M/WBE plan is unconstitutional or that the M/WBE plan expired in accordance with the terms of its enabling statute which never authorized a penalty. The court does not reach the alternative grounds raised by the defendants for their motion to dismiss the plaintiffs first cause of action.
Order
Based upon all the papers submitted in support of and in opposition to this motion, upon the above decision, and after due deliberation, it is hereby ordered that the motion of the defendants, E & L Piping, Inc. and Fidelity & Deposit Company of Maryland, seeking an order granting the defendants partial summary judgment dismissing plaintiff City of Rochester’s first causé of action in its second amended complaint for breach of contract by failing to satisfy Minority and Women Business Enterprise Utilization Plan requirements, on the ground that the liquidated damages provision is an unenforceable penalty is granted; it is ordered that the plaintiffs first cause of action in its second amended complaint is dismissed; and it is ordered that all other applications are denied, without prejudice.

. Unlike the cited cases, there are no specific actual damages or actual injuries recognized in the plan if the goals are not met. Instead, the plan (j[ 10) indicates generally the alleged damages to be incurred by the City: “The [City] recognizes the necessity of correcting the effects of discrimination in City procurement, and that the socio-economic benefits of this program are large but immeasurable. Failure to comply with the M/WBE utilization requirements in this contract would cause damages reaching beyond ascertainable monetary values.”

. Mr. Carfagna’s duties include “overseeing the procedures, implementation and compliance with the City’s [M/WBE] in conjunction with public improvement contracts within the City.” (Affidavit of Carfagna, Mar. 28, 2003, fi 2.)