**MevRam Servs., LLC v
Quadrum Hospitality Group, LLC**

2024 NY Slip Op 31163(U)

April 4, 2024

Supreme Court, New York County

Docket Number: Index No. 652871/2023

Judge: James d'Auguste

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **Hon. James E. d'Auguste**     **PART 55**

*Justice*

-------------------------------------------------------------------X

MEVRAM SERVICES, LLC,

                  Plaintiff,

           - v -

QUADRUM HOSPITALITY GROUP, LLC, ARLO SOHO,
LLC, ARLO NOMAD, LLC, ARLO MIDTOWN, LLC,

                  Defendants.

-------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 652871/2023 |
| **MOTION DATE** | 08/21/2023 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 9, 10, 11, 13, 14, 15, 16, 17, 19, 21

were read on this motion to/for                    DISMISS              .

In Motion Sequence 001, defendants Quadrum Hospitality Group, LLC ("Quadrum"), Arlo Soho, LLC, Arlo Nomad, LLC, and Arlo Midtown, LLC ("Arlo defendants") (collectively "defendants"), move for dismissal of claims in plaintiff MevRam Services, LLC's ("MevRam") complaint. Defendants oppose the motion. For the reasons set forth below, the motion is denied.

MevRam is a full-service hospitality and commercial cleaning company that staffs employees, including housekeepers and front-desk employees for hotels; MevRam provides services based on agreements with commercial companies, such as hotels. Quadrum is the parent company of the Arlo defendants, who each operate a hotel in New York City. MevRam and Quadrum entered into three service agreements for MevRam to provide engineering and housekeeping services to Quadrum's hotels (NYSCEF Doc. Nos. 10, 13).

The action arises from MevRam's complaint asserting that defendants allegedly wrongfully breached the terms of three service agreements between the parties. Each agreement contains essentially the same terms and conditions, except for the particular employees and

**652871/2023 MEVRAM SERVICES, LLC, vs. QUADRUM HOSPITALITY GROUP, LLC ET AL**
Motion No. 001

Page 1 of 5

services MevRam would provide. Each agreement also contains a no-poaching provision—which prohibited either party engaging any staff employee of the other party for a period of 90 days after termination of the agreements. The contracts additionally provide that if the no-poaching agreements were violated, the poaching party was required to continue the employee's assignment for 520 consecutive work hours or pay MevRam a fee equivalent to 520 work hours of such employee (NYSCEF Doc. Nos. 10, 17).

Defendants move for dismissal of MevRam's claims related to the no-poaching provision asserting it is void, unenforceable and violates public policy. Defendants argue the no-poaching provision violates the New York City Displaced Building Service Workers Protection Act ("DBSWPA"), and the New York City Displaced Hotel Service Workers Act (DHSWA"). Defendants assert that MevRam's claims that the "employees at issue were not displaced and remained employed by MevRam" is unsupported by any exception written into either law, and MevRam is simply "attempting an end-run around both of these laws" via enforcement of the no-poaching provision in the parties' contracts (NYSCEF Doc. No. 21).

MevRam asserts that defendants breached the agreements by terminating them early without providing the requisite notice, and by poaching MevRam's employees immediately following termination of the contracts. MevRam contends that immediately after breaching the parties' agreements, defendants hired Proper Hospitality Services ("PHS") to replace MevRam, and PHS promptly hired 32 of MevRam's active employees to continue performing the same services they did under the agreements between MevRam and defendants. However, despite the breach, Mevram claims defendants refused to compensate MevRam fees owed, as required under the no-poaching provision of the parties' agreements (NYSCEF Doc. Nos. 10, 17).

[* 2]

Further, MevRam maintains that there is no support for defendants' arguments under the DBSWPA and the DHSWA claiming neither applies to the instant matter. Mevram notes that the employees at issue were not displaced and remained employed by MevRam with numerous other available assignments following defendants' breach of the parties' contracts. Additionally, MevRam notes that it is willing to provide alternative employment to its employees once a service agreement is terminated (NYSCEF Doc. Nos. 17, 21).

Moreover, MevRam contends that contrary to defendants' assertions the liquidated damages clause within the parties' agreements is enforceable. MevRam claims the provision for liquidated damages within the parties' agreements is reasonably calculated based on a formula that was intended, at the time the parties entered into the agreements, to estimate the actual damages, and the amount of the liquidated damages is not grossly disproportionate to the actual damages suffered (NYSCEF Doc. No. 17) (see *Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.,* 41 NY2d 420 [1977]).

Defendants' claims that the no-poaching provision violates the DBSWPA and DHSWA are meritless given that the employees were never displaced, and the two laws are not implicated herein. It is clear DHSWA does not apply as it deals with a change in control of a hotel. As there was no such change in control or identity of the hotels or hotels' employer herein as defendants still own and control the hotels, the DHSWA is inapplicable, and the no-poaching provision did not require defendants to violate that law. Hence, the no-poaching provision is enforceable against defendants (NYSCEF Doc. Nos. 10, 17).

Similarly, while the DBSWPA on its face appears to be relevant to the instant matter, the cases analyzing claims under the DBSWPA concern circumstances where employees were actually displaced—when a new employer took over the management of a building, unlike here.

652871/2023  MEVRAM SERVICES, LLC, vs. QUADRUM HOSPITALITY GROUP, LLC ET AL          Page 3 of 5
Motion No. 001

3 of 5

*Guerrero v. Club Quarters Mgmt. Co., LLC,* 74 Misc. 3d 224 [Sup Ct, NY County. 2021] (applying the DBSWPA where purchaser of hotel terminated plaintiff employees). Unlike in *Guerrero*, there was no change in defendants' hotels' management, instead defendants breached their contracts with MevRam to circumvent their obligations and poached MevRam's employees. Thus, even had PHS failed to retain the subject employees as the successor contractor for defendants, the employees would have remained employed by MevRam and continued to receive their normal pay and benefits (NYSCEF Doc. No. 17). In any event, even if defendants were required to hire these employees under the law due to defendants early termination of the parties' agreements, same does not change defendants' obligation to compensate plaintiffs for breach of the no-poaching provision of those agreements (NYSCEF Doc. No. 17).

While the no-poaching provision restricts defendants' ability to poach MevRam's employees, it places no restrictions on the employees themselves. New York courts have noted a lack of precedent governing no-poaching provisions, thus, apply the same three-pronged reasonableness test utilized in ascertaining the validity of non-compete clauses. *Reed Elsevier Inc. v. Transunion Holding Co., Inc.*, 2014 WL 97317, at *7 [Jan. 9, 2014, No. 13-Civ.-8739 (PKC)] (citing *OTG Mgmt, LLC v. Konstantinidis*, 967 NY2d 823 [Sup. Ct. 2013]). The enforceability of a restrictive covenant requires an analysis of the particular facts and circumstances giving context to the agreement. *Reed Elsevier Inc.*, 2014 WL 97317, at *7. Further, the no-poaching provision is designed to protect MevRam's legitimate business interest in preventing its "disintermediation" - cutting out the middleman. *Design Partners, Inc. v. Five Star Electric Corp.*, 2017 WL 818364, at *14, n. 16 [ED NY. Mar. 1, 2017, No. 12-CV-2949 (PKC) (VMS)].

In *Design Partners*, the Court noted that where an alleged wrongdoing was committed by "one sophisticated business entity against another," "the powerful consideration of public policy which militate against sanctioning the loss of a man's livelihood are not implicated to the same extent as where an employer seeks to enforce a restrictive covenant against an employee." *Id.* Here, as both parties herein are sophisticated business entities, without the protection of the no-poaching provision in the parties' agreements, defendants would be allowed to hire MevRam's employees directly and disintermediate MevRam, thus making MevRam's whole function as a staffing agency obsolete. Hence, the no-poaching provision is valid, as is the enforceable liquidated damages clause against defendants within the parties' agreements.

Accordingly, it is

ORDERED that defendants' motion to dismiss is denied.

This constitutes the decision and order of the Court.

| 4/4/2024 | | | | James d'Auguste, J.S.C. |
| DATE | | | | |

CHECK ONE:

| | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
| | GRANTED | X DENIED | | GRANTED IN PART | OTHER |

APPLICATION:

| | SETTLE ORDER | | | SUBMIT ORDER | |

CHECK IF APPROPRIATE:

| | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

652871/2023  MEVRAM SERVICES, LLC, vs. QUADRUM HOSPITALITY GROUP, LLC ET AL
Motion No. 001

Page 5 of 5

5 of 5

[* 5]