■ EUGENIA VI VENTURE HOLDINGS, LTD., Respondent-Appellant, v AMC INVESTORS, LLC, et al., Appellants-Respondents. [826 NYS2d 208]—

Judgment, Supreme Court, New York County (Helen E. Freedman, J.), entered March 23, 2006, awarding plaintiff the principal sum of $7,854,267, plus $402,508 in professional fees and expenses and $590 in costs and disbursements, for a sum total of $8,257,365, unanimously reversed, on the law and the facts, without costs or disbursements, the judgment vacated, plaintiff's motion for summary judgment in lieu of complaint granted only as to liability, and the matter remanded for a trial on damages, including fees and costs. Appeal from order, same court and Justice, entered March 13, 2006, denying reargument, unanimously dismissed, without costs, as nonappealable.

On January 30, 2003, plaintiff, a British Virgin Islands company, entered into an amended and restated credit agreement to lend AMC Computer Corp. (AMC) up to $16 million by means of revolving and term credit facilities. By agreement entered into that same date, defendants AMC Investors, LLC and AMC Investors II, LLC unconditionally guaranteed both payment and performance of AMC's obligations under the credit agreement. AMC's obligations included "all principal, interest . . . Fees, Charges, expenses, attorneys' fees and any other sum chargeable to [AMC and/or defendants] under the Agreement or any of the other Loan Documents." In addition, AMC's obligations—and thus, defendants' obligations—under the guaranty included the fees, costs and disbursements of plaintiff and its counsel or other advisors incurred in connection with any dispute or litigation.

By letter dated May 6, 2005, after AMC representatives had informed plaintiff that AMC had submitted false borrowing base certificates, in violation of the terms of the credit agreement, plaintiff notified AMC that its false submissions and failure to submit audited financial statements covering fiscal years 2003 and 2004, also a violation of the credit agreement's terms, constituted events of default under the agreement. Plaintiff "suspend[ed]" further advances under the revolving facility. By letter of June 3, 2005, plaintiff accelerated and demanded immediate payment of all outstanding obligations from AMC under the credit agreement. By letter of same date, plaintiff notified defendants of AMC's default and demanded payment under the guaranty.

On September 8, 2005, plaintiff moved for summary judgment in lieu of complaint (CPLR 3213) under the guaranty for the outstanding obligations under the credit agreement for at

least \$8,906,775, including at least \$650,000 in attorneys' fees due as of that date for prosecuting this action. In support of the motion, plaintiff submitted the affidavit of Stephen Bell, an accountant and director at KPMG LLP in the forensic services practice, in which he set forth the steps taken to determine the outstanding amounts of principal and interest due. Bell stated that the total balance due as of September 1, 2005 was \$7,854,267. As of September 7, 2005, KPMG had invoiced plaintiff \$402,508 for professional fees and expenses through August 15. Defendants offered no substantive defense to the motion, arguing instead that service was defective and that they were not given 30 days to respond as provided by the amended credit agreement, and requesting an adjournment to enable them to respond. In reply, plaintiff agreed to extend defendants' time to respond to the motion to October 19, 2005.

In a further submission, defendants conceded liability on the guaranty but disputed the amount due and claimed entitlement to discovery to determine the "exact judgment amount." In a further affirmation, plaintiff's counsel, noting the concession as to liability, requested the court to "schedule a brief inquest to determine the amount of damages." Supreme Court granted the motion for summary judgment in lieu of complaint in the sum of \$7,854,267, finding that defendants, having conceded liability and not having submitted any evidence to rebut the accountant's calculations, failed to raise an issue of fact. The court, however, never addressed plaintiff's request for \$650,000 in attorneys' fees. We reverse.

Defendants argue, and the record confirms, that there was no exchange of information between them, as guarantors, and plaintiff, as the lender, to permit an efficacious challenge to the latter's damage and expense claims. In fact, there is no evidence that defendants were privy to the lending information at any time. Bell, the accountant retained by plaintiff to determine the outstanding amounts of principal and interest it was due, failed to attach the "lockbox activity report" on which he relied, his analysis of the collections activity as of September 1, 2005, or work papers or any other supporting documents to show how he arrived at his figures. In addition, he failed to submit billing statements to substantiate KPMG's claim to have invoiced plaintiff \$402,508 for professional fees and expenses incurred through August 15, 2005. In light of the foregoing circumstances, a clear issue of fact is presented as to the quantum of damages due under the guaranty, as to which plaintiff bears the burden of proof (see *J.R. Loftus, Inc. v White*, 85 NY2d 874, 877 [1995]).

Accordingly, we remand for a trial on damages and the opportunity, if warranted, for discovery by defendants. The award of damages should also include attorneys' fees and costs to which plaintiff was entitled for the prosecution of its rights pursuant to the credit agreement (*see Sempra Energy Trading Corp. v PG&E Tex. VGM*, 284 AD2d 253 [2001]). Concur—Friedman, J.P., Marlow, Sullivan, Nardelli and Gonzalez, JJ.