176 PM, LLC v Heights Stor. Garage, Inc. (2018 NY Slip Op 00223)





176 PM, LLC v Heights Stor. Garage, Inc.


2018 NY Slip Op 00223


Decided on January 11, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 11, 2018

Renwick, J.P., Gische, Tom, Oing, Singh, JJ.


5189- 5190- 5191-5192 107595/11 155306/12

[*1]176 PM, LLC, Plaintiff-Appellant, 
v
Heights Storage Garage, Inc., Defendant-Respondent.
Heights Storage Garage, Inc., Plaintiff-Respondent,
v
Stephen B. Reynolds, Defendant-Appellant.


Akerman LLP, New York (Michael S. Simon of counsel), for appellants.
Law Office of Mark S. Friedlander, New York (Mark S. Friedlander of counsel), for respondent.



Judgment, Supreme Court, New York County (Geoffrey D. Wright, J.), entered April 30, 2015, in favor of the landlord Heights Storage Garage, Inc. and against the tenant 176 PM, LLC in the total amount of $824,508.19, and bringing up for review an order, same court and Justice, entered August 25, 2014, which granted the landlord summary judgment dismissing the complaint and granted the landlord's motion for summary judgment on its 2nd, 5th, 6th and 7th counterclaims, and an order, same court and Justice, entered on or about April 6, 2015, which determined that the amount of rent due to the landlord was $818,313.46; and judgment, same court and Justice, entered July 18, 2016, in favor of the landlord in the total amount of $1,199,162.94, and bringing up for review an order, same court and Justice, entered on or about April 6, 2016, which, among other things, granted the landlord summary judgment on its causes of action against defendant Stephen B. Reynolds for the rent due from the tenant, unanimously reversed, on the law, without costs, the judgments vacated, and the landlord's summary judgment motions denied with regard to the landlord's fifth and sixth counterclaims and fifth and sixth causes of actions. Appeals from order, entered on or about April 6, 2015 and from order of same court and Justice, entered February 17, 2016, unanimously dismissed, without costs, as superseded by the appeals from the April 30, 2015 and July 18, 2016 judgments.
This dispute stems from a breach of a commercial lease by a tenant and a guarantor. In August 1996, the predecessor in interest of the tenant entered into a 28-year lease (until August 2024) with the landlord to rent the landlord's building, a four-story parking garage with two retail subtenants at the street level, located in Manhattan. In June 2011, the landlord served the tenant with a written notice to cure 21 lease violations primarily related to the physical deterioration of the building caused by the tenant. In response, the tenant commenced the instant action and moved by order to show cause for a Yellowstone injunction seeking to prevent the landlord from taking any steps to terminate the tenancy.
However, a month before the scheduled Yellowstone injunction hearing was to take place, the tenant advised the landlord that it was vacating the premises, which it did on August 31, 2013. In September 2013, the landlord answered the complaint, asserting counterclaims for damages for the tenant's alleged failure to maintain the property as required under the lease leading to code violations (second counterclaim), rent for the 10-year remainder of the lease term (fifth and sixth counterclaims), and payment of $43,493.25 per month for the 12-month period [*2]from September 1, 2012, through August 31, 2013 (seventh counterclaim).
In March 2014, the landlord moved for summary judgment on the second, fifth, sixth, and seventh counterclaims. In opposition, the tenant argued that there had been an acceptance of surrender of the lease by operation of law, since the landlord had assumed dominion and control of the building for its own benefit after the tenant gave written notice that it was vacating the premises in August 2013. The tenant claimed that it returned the keys to the landlord when it vacated the property, and that the landlord retained Central Parking Systems as the full-time garage operator. Moreover, the landlord collected the parking income and sent bills directly to the subtenants. Finally, the tenant asserted that the landlord had placed the property for sale at some unidentified juncture.
In August 2014, Supreme Court granted the landlord summary judgment on liability on its counterclaims (2nd, 5th, 6th and 7th) and found that an assessment of the landlord's damages and the tenant's set offs on those claims was warranted [FN1]. With regard to the second counterclaim, for costs incurred as a result of actions or inactions of the tenant leading to the issuance of code violations, the court found that the tenant offered no reasonable defense to those violations. With regard to the fifth and sixth counterclaims, for unpaid rent, the court found that there was no acceptance of surrender of the lease by operation of law because it was undisputed that the landlord continued to demand rent from the tenant for a year. Finally, with regard to the seventh counterclaim (payments owed for September 1, 2012 through August 31, 2013), the court found that it was not disputed.
After it granted summary judgment on liability on the above counterclaims, Supreme Court directed the landlord to quantify the amount of the base rent, late fees, and interest that remained due under the lease occasioned by the tenant's premature departure from the premises. In January 2015, the landlord moved for summary judgment, quantifying the amount due as $635,348.93. The landlord attached a spreadsheet indicating that base rent owed from August 1, 2013 through December 31, 2014, with late charges and interest, was $1,503,903.93, and that the offset for rents the landlord had received from the current tenants at the premises was $865,555.30, reducing the amount owed by the tenant to $635,348.63.
The landlord noted that base rent alone, without the late charges and interest, totaled $1,004,444.30. However, paragraph 11 of the lease contemplated a late charge of $2,000 for the fixed minimum payment of rent after the fifth day of the month in which the payment is due, together with a charge of 4% for any additional rent unpaid after the same date and a charge of 4% of the amount of any rent or additional rent that remains unpaid from a prior month. Without those late fees, the total amount owed, taking into account rent received by the landlord, would have been $190,102.65.
The tenant disputed the landlord's computation of damages and the manner in which it applied late fees to the amounts allegedly owed. The tenant argued that the landlord's spreadsheet contained incorrect arithmetic, and that the difference between base rent due (without including late fees) and the rent received from the commercial tenants was $94,449.80, not $190,102.65. Moreover, the tenant argued, when calculating late fees, the landlord disregarded a common bookkeeping principle of applying the amount received each month to the oldest outstanding balance, and that if it had done so, the landlord would have eliminated the older late fee payments, thereby preventing the accumulation of massive late fees. Instead, the landlord allowed the late fees to aggregate in its favor and to the tenant's detriment.
Furthermore, the tenant argued, the late charges should have applied not to the entire base rent, but rather only to the difference between the amount owed by the tenant each month and the amount of rent received by the landlord from the commercial subtenants for that corresponding month. The tenant argued that the landlord's computation of $635,348.93 was grossly disproportionate to the amount of actual rent owed, $94,449.80.
Ultimately, Supreme Court granted the landlord summary judgment, awarding damages for unpaid rent and additional rent through March 31, 2015 in the amount of $818,313.46. The court found that the only remaining disputes concerned the calculation of late fees imposed by the landlord, and where the credits for rent collected from the new subtenants should appear on the landlord's ledgers.
The court also found defendant Reynolds, the guarantor, personally liable for the tenant's liabilities under the lease, pursuant to a "good guy guaranty," which Reynold had signed on March 30, 2007. Reynolds asserted the defense that the landlord had accepted the tenant's August 31, 2013 surrender of the premises and that the landlord had released the premises to Central Parking System of New York, Inc. and two other subtenants, and therefore he was released from any liability under the good guy guaranty. Reynolds also cross-moved for leave to amend his answer to assert the defense that his obligations under the good guy guaranty were discharged by virtue of the September 10, 2007 lease modification to correct a "mistake" made in a prior lease modification that had limited the tenant's liability for the payment of real estate taxes to tax increases, as opposed to 100% of all real estate taxes.
Thus, both the tenant and the guarantor challenge the grant of summary judgment to the landlord on liability and damages with regard to the alleged breach of the lease obligations that accrued after the tenant's premature abandonment of the premises. The parties do not challenge the grant of summary judgment on liability and damages for the alleged breach of the commercial lease obligations that accrued prior to the tenant's premature abandonment of the premises.
We find that the tenant raised a triable issue of fact as to whether a surrender of the premises was effected by operation of law (see Riverside Research Inst. v KMGA, Inc., 68 NY2d 689, 691—692 [1986]). More specifically, the tenant raised a viable issue of fact as to whether the landlord took dominion and control of the building for its own benefit. The tenant submitted evidence that, after it returned the keys to the landlord and vacated the premises, the landlord took possession of the premises, and not only sent bills directly to the subtenants, but also entered into its own contract with Central Parking to operate the parking garage and to pay the landlord each month all the income received from the garage operations. The tenant submitted further evidence that the landlord placed the property for sale at some juncture. When viewed in the light most favorable to the tenant, as nonmoving party, and given the nonmoving party the benefit of all reasonable inferences that can be drawn from the evidence (see Negri v Stop & Shop, 65 NY2d 625, 626 [1985]), these facts support an inference that, upon the tenant's abandonment, the landlord intended to take dominion and control of the premises for its own benefit.
Thus, Supreme Court improperly overlooked triable issues of fact on liability presented by the tenant and by the guarantor's defense of acceptance of surrender of the lease by operation of law. However, the motion court properly denied the guarantor's cross motion as devoid of merits, to the extent it found him liable under his personal good guy guaranty for the tenant's obligations under the lease. Finally, the tenant and guarantor raised triable issues on damages as to the alleged breach of the lease obligations that accrued after the tenant's premature abandonment of the premises. Specifically, if there is a finding of liability, a trial is warranted to determine the quantum of damages due under the lease and guaranty because the tenant and the guarantor have highlighted the aforementioned discrepancies in the amounts allegedly owed under the remainder of the lease, mainly disputing the landlord's methodology of its calculation of outstanding fees and other charges (see e.g. Eugenia VI Venture Holdings, Ltd. v AMC Invs., LLC, 35 AD3d 157, 159 [1st Dept 2006]). Further, in our view, the judgments against the tenant and the guarantor, in the amounts of $824,508.19 and $1,199,162.94, respectively, appear to be unreasonable and grossly disproportionate to the amount of actual unpaid rent, which the evidence submitted by the tenant suggests is only $94,449.80 (see generally Truck Rent-A-Ctr. v [*3]Puritan Farms 2nd, 41 NY2d 420, 424 [1977]; see also Sandra's Jewel Box v 401 Hotel, 273 AD2d 1, 3 [1st Dept 2000]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 11, 2018
CLERK



Footnotes

Footnote 1: Supreme Court dismissed the tenant's complaint because there was no need for a Yellowstone injunction since the tenant had surrendered possession.