Seymour v Hovnanian (2022 NY Slip Op 04705)

Seymour v Hovnanian

2022 NY Slip Op 04705

Decided on July 26, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: July 26, 2022

Before: Gische, J.P., Moulton, Scarpulla, Shulman, Pitt, JJ. 

Index No. 154579/16, 595896/16 Appeal No. 15653-15654-15654A Case No. 2020-03584, 2020-03689, 2020-04815 

[*1]Gabriel North Seymour et al., Plaintiffs-Respondents-Appellants,
v
Ara Hovnanian et al., Defendants-Appellants-Respondents.
Ara Hovnanian, Third-Party Plaintiffs-Appellants-Respondents,
v
Autun Contractors et al., Third-Party Defendants-Respondents, Signature Interior Demolition, Inc., Third-Party Defendant-Respondent-Appellant, Super JC Construction Corporation, Third-Party Defendant.

Lester Schwab Katz & Dwyer, LLP, New York (Daniel S. Kotler of counsel), for appellants-respondents.
Weddle Law PLLC, New York (Brian M. Witthuhn of counsel), for Gabriel North Seymour and Tryntje Van Ness Seymour, and Catryna Ten Eyck Seymour, respondents-appellants.
Pillinger Miller Tarallo, LLP, Garden City (Gina Marie Wischhusen of counsel), for Signature Interior Demolition, Inc., respondent-appellant.
Law Offices of Cheng & Associates, Long Island City (Pui Chi Cheng of counsel), for ADS Construction Corporation, respondent.
Milber Makris Plousadis & Seiden, LLP, Purchase (Vincent Camacho of counsel), for William F. O'Neill Architects, respondent.
Kaufman Dolowich Voluck, LLP, White Plains (Siobhan A. Healy of counsel), for Gilsanz Murray Steficek, LLP, respondent.
Wilson Elser Moskowitz Edelman & Dicker LLP, White Plains (James F. O'Brien of counsel), for Pillori Associates, PA, respondent.
Fixler & LaGattuta LLP, New York (Paul F. LaGattuta III of counsel), for JG Construction of Queens Inc., respondent.
Smith Mazure, P.C., New York (Louise M. Cherkis of counsel), for Mitchell Iron Works, Inc., respondent.

Order, Supreme Court, New York County (Melissa A. Crane, J.), entered on or about July 17, 2020, which granted defendants' motion to strike plaintiffs' jury demand, unanimously reversed, on the law, and the motion denied, without costs. Order, same court and Justice, entered on or about July 10, 2020, which, to the extent appealed from as limited by the briefs, denied defendants' motion for summary judgment dismissing the trespass claim and so much of the breach of contract claim as seeks liquidated damages, and granted plaintiffs' motion for summary judgment on those claims, unanimously modified, on the law, to deny plaintiffs' motion as to the trespass claim and otherwise affirmed, without costs. Order, same court and Justice, entered on or about November 9, 2020, which, to the extent appealed from as limited by the briefs, denied defendants' motion for summary judgment dismissing the claims for nuisance, negligence, attorneys' fees in this action, and loss of habitability, granted plaintiffs' motion for summary judgment on the claims for nuisance, attorneys' fees in this action, and loss of habitability, granted defendants' motion for summary judgment dismissing the intentional infliction of emotional distress claim and the demand for punitive damages, granted third-party defendants Signature Interior Demolition, Inc.'s, Mitchell Iron Works, Inc.'s, and JG Construction of Queens, Inc.'s motions for summary judgment dismissing defendants' third-party contribution and common-law indemnification claims against them, and granted third-party defendants Williams F. O'Neill Architects', Pillori Associates, PA's, and Gilsanz Murry Steficek LLP's (GMS) motions for summary judgment dismissing the third-party contribution claims against them, unanimously modified, on the law, to grant defendants' motion as to the claim for loss of habitability, deny plaintiffs' motion for summary judgment on the claims for nuisance and loss of habitability, grant plaintiff's motion for attorneys' fees in this action solely in connection with the contract claims, deny Signature Demolition's, Mitchell Iron Works', and JG Construction's motions for summary judgment dismissing the third-party contribution and common-law indemnification claims against them, and deny O'Neill Architects', Pillori Associates', and GMS's motions for summary judgment dismissing the third-party contribution claims against them, and otherwise affirmed, without costs.
Whitney North Seymour, Jr. and his wife Catryna Ten Eyck Seymour (the Seymours) had lived at 290 West 4th Street for over 56 years when defendants Ara Hovnanian and his wife Rachel Lee Hovnanian (the Hovnanians) purchased the neighboring townhouse at 292 West 4th Street in July 2012. Plaintiffs Gabriel North Seymour and Tryntje Van Ness Seymour are the Seymours' daughters and co-executors of their parents' estates. The third-party defendants are the Hovnanians' architect, the general contractor or construction manager, and contractors [*2]specializing in demolition, geotechnical surveys, preconstruction surveys, vibration monitoring, steelwork, and underpinning. The underpinning contractors and the steelwork contractors were hired directly by the Hovnanians.
The Seymours' and Hovnanians' townhouses were built in the 1860s and are part of the historic district of Greenwich Village. The townhouses shared a party wall. In July 2012, the Seymours invited the Hovnanians to their home for tea where they discussed the Hovnanians' large-scale renovation project. The Hovnanians' plans included expanding their townhouse to exceed the height of the Seymours' townhouse, lowering their basement four feet, and lowering their rear yard several feet.
The Hovnanians' project ultimately resulted in extensive damage to the Seymours' townhouse, among other problems. The project damaged the interior original 1860's plaster, the exterior brick masonry and stucco, the party wall, the rear yard, the oculus stained-glass laylight,[FN1] the skylight, the roof, and the boiler. The project also forced the Seymours to move because of lead dust infiltration caused by the Hovnanians' roof work.[FN2]
The Seymours were on a trip in September 2012 when the lead dust contaminated their townhouse. However, their upstairs tenants, who rented the second and third floors of the townhouse, were home to witness the infiltration. The Seymours contracted for environmental testing. The December 2012 results showed that, among other things, the dust in the first-floor parlor chimney contained concentrations of lead far in excess of any amount considered acceptable to human health. The testing also showed elevated levels of Trichlorethylene, a hazardous industrial solvent.[FN3] After learning of the results on December 17, 2012, the Seymours left their home to stay temporarily with one of their daughters at her house in Connecticut. They passed away years later without ever returning to their home.
On May 2, 2013, after intensive negotiations guided by legal counsel, Mr. Seymour and the Hovnanians executed a license agreement. The purpose of the license agreement was to grant the Hovnanians 18 months of access to the Seymours' property while simultaneously protecting the Seymours' property from further harm during construction. The license agreement contained a liquidated damages clause providing that if the "Project Owner failed to obtain a temporary certificate of occupancy (TCO) within Eighteen (18) months from the date of this Agreement, he shall pay liquidated damages to the Adjacent Owner of $1,000 per day for every day thereafter until the TCO is issued." The Hovnanians never obtained a temporary certificate of occupancy but, 318 days after the expiration of the 18-month license term, they obtained a certificate of occupancy.
The motion court correctly determined that the license agreement required the Hovnanians to pay plaintiffs' legal fees incurred in disputes between them. Paragraph 11(iii) of the license agreement requires [*3]the Hovnanians to indemnify the Seymours for any loss or expense, including reasonable attorneys' fees, incurred by the Seymours as a result of "the execution and/or existence and/or the effectuation of this Agreement, including claims for personal injury or property damage sustained by any contractor, worker, or any other third or non-party." Thus, it provides plaintiffs with indemnification for the Hovnanians' breaches of their obligations under the license agreement (Shah v 20 E. 64th St., LLC, 198 AD3d 23, 41-42 [1st Dept 2021]; see generally Hooper Assoc. v AGS Computers, 74 NY2d 487, 491 [1989]). The phrase, "including claims for personal injury or property damages sustained by any contractor, worker, or any other third or non-party," necessarily indicates that the provision is broader than third-party claims (see Sagittarius Broadcasting Corp. v Evergreen Media Corp., 243 AD2d 325, 326 [1st Dept 1997]). Moreover, this interpretation is consistent with the "purpose of the entire agreement" (Hooper Assoc., 74 NY2d at 492), which was to protect plaintiffs' home from damage caused by the Hovnanians' renovation project, a project from which plaintiffs derived no benefit. However, to the extent the court granted plaintiffs summary judgment on the claim for reasonable legal fees and expenses incurred "in connection with this litigation," we modify to clarify that plaintiffs are only entitled to legal fees incurred in connection with prosecuting their contract claims in this litigation.
The court correctly awarded plaintiffs $318,000 in liquidated damages, plus interest, comprised of $1,000 per day for the period of November 2, 2014 to September 15, 2015. "Liquidated damages constitute the compensation which, the parties have agreed, should be paid in order to satisfy any loss or injury flowing from a breach of their contract" (Truck Rent-A-Ctr. v Puritan Farms 2nd, 41 NY2d 420, 423-424 [1977]). These provisions "have value in those situations where it would be difficult, if not actually impossible, to calculate the amount of actual damage" (id. at 424). Liquidated damages will be sustained if, at the time of the contract, "the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation" (Truck Rent-A-Ctr., 41 NY2d at 425; see also JMD Holding Corp. v Congress Fin. Corp., 4 NY3d 373, 380 [2005]).
Whether a liquidated damages provision is an unenforceable penalty is a question of law for the court (JMD Holding Corp., 4 NY3d at 379). The party seeking to avoid liquidated damages has the burden to prove that they are an unenforceable penalty (see Trustees of Columbia Univ. in the City of N.Y. v D'Agostino Supermarkets, Inc., 36 NY3d 69, 75 [2020]). If the amount is "grossly disproportionate" to the probable loss, the provision is a penalty, and courts will not enforce it (id. at 71; Truck Rent-A-Ctr., 41 NY2d at 424-425). In the absence of any countervailing public [*4]policy concerns, "[f]reedom of contract prevails in an arm's length transaction between sophisticated parties" (Trustees of Columbia Univ., 36 NY3d at 75 n 4).
The term "grossly disproportionate" in the liquidated damages context does not lend itself to a precise definition. However, Trustees of Columbia Univ. (36 NY3d 69) is instructive. There, the Court of Appeals found that the liquidated damages, which "were 7½ times what plaintiff would have received if defendant had fully complied with the surrender agreement," were "grossly disproportionate" to the actual loss (id. at 75, 80). By contrast, courts have held that liquidated damages clauses that permit a landlord to recover between two or three times the amount of the existing rent or license fee in a holdover proceeding are not "grossly disproportionate" to the probable loss and therefore, not a penalty (see Tenber Assoc. v Bloomberg L.P., 51 AD3d 573, 574 [1st Dept 2008]; Federal Realty Ltd. Partnership v. Choices Women's Med. Ctr., Inc., 289 AD2d 439, 440-442 [2d Dept 2001]; Withers Bergman LP v Solus Alternative Asset Mgt. LP, 35 Misc 3d 138(A) [App Term, 1st Dept 2012]; Carlyle, LLC v Quik Park Beekman II, LLC, 59 Misc 3d 35, 37 [App Term, 1st Dept 2018]).
The Hovnanians unpersuasively argue that the liquidated damages are "grossly disproportionate" to the rental value of the Seymours' home. They concede that the daily rental value for the Seymours' tenants' apartment is $200 per day and that plaintiffs' appraiser valued the daily rental for the Seymours' apartment at $230 per day. Thus, the liquidated damages of $1,000 per day, which is 2.3 times the $430 daily lost rental value for the Seymours' townhouse, is not "grossly disproportionate" to plaintiffs' actual damages. As there is no countervailing public policy concern, "[f]reedom of contract prevails" in this "arm's length transaction between sophisticated parties" (Trustees of Columbia Univ., 36 NY3d at 75 n 4).
The Hovnanians' remaining arguments regarding the unenforceability of the liquidated damages clause lack merit. They baselessly maintain that when the clause was triggered in November 2014, the Seymours could not have been damaged or affected by the Hovnanians' delay in obtaining a temporary certificate of occupancy because the Seymours moved into an assisted living facility with no intent to return home. However, there is no evidence in the record to indicate that the Seymours would not have been able to return home during the period of time for which liquidated damages were awarded (from November 2, 2014 to September 15, 2015), either with part-time or full-time home care if their health required it. There is also no evidence to rebut plaintiffs' affidavits explaining that they purposefully moved their parents to a month-to-month apartment at an assisted living facility in November 2014 with the hope and expectation that the townhouse would be made habitable for their parents' return.
The Hovnanians also make the untenable [*5]argument that they can ignore their agreement to pay liquidated damages after the expiration of the 18-month term because the requirement to obtain a temporary certificate of occupancy was "ministerial." This argument is baseless because it was the Hovnanians who proposed that the liquidated damages provision be tied to obtaining a temporary certificate of occupancy.
Moreover, the Hovanians' argument that the Seymours incurred no damages because their tenants did not move out or withhold rent is improperly based on hindsight and is irrelevant. The law is well settled that liquidated damages are "an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement" (Truck Rent-A-Ctr., 41 NY2d at 424). At the time that the license agreement was executed in May 2013 the parties faced many uncertainties, including the extent of the project's disruption, whether the tenants would move out or withhold rent, and whether the tenants' apartment could be re-rented (see id. at 425 ["[t]o be sure, plaintiff's lost profit could readily be measured by the amount of the weekly rental fee" but "it was permissible for the parties, in advance, to agree that the re-rental or sale value of the vehicles would be 50% of the weekly rental" since there were uncertainties]). Consequently, when the license agreement was executed, the liquidated damages were a reasonable estimate of the potential losses.
The Hovnanians unpersuasively argue that the liquidated damages are "duplicative" of plaintiffs' loss of habitability and nuisance claims, resulting in a "windfall" to plaintiffs. Plaintiffs are not entitled to damages for loss of habitability for the reasons discussed below. The liquidated damages clause and plaintiffs' nuisance claim cover distinct harms and distinct periods of time (see e.g. Parker v Parker, 163 AD3d 405, 406 [1st Dept 2018] [award of liquidated damages and compensatory damages were not duplicative because they covered distinct harms]).
Contrary to the motion court's finding, plaintiffs are not entitled to damages for loss of habitability. Plaintiffs assert that they moved their parents to a family home in Connecticut and then to a month-to-month apartment as the result of the lead dust infiltration and the damages caused by the Hovnanians' renovation. However, the license agreement did not require the Hovnanians to reimburse the Seymours for a loss of habitability except for "any costs, claims, lost rent, litigation or liability" they incurred or will incur in the future "as a result of" the loss of habitability. The record contains no evidence that the Seymours incurred costs, claims, lost rent, litigation or liability as a result of the loss of habitability.[FN4]
As the court found, issues of fact exist as to whether and to what extent the Hovnanians participated in the alleged wrongdoing by their contractors. However, because it is unclear whether and [*6]to what extent the Hovnanians were involved in the placement of the splice box on the Seymours' property or the vents and flues that vented into the Seymours' yard, the court erred in granting plaintiffs summary judgment on the trespass and nuisance claims.
The court also erred in dismissing the Hovnanians' common-law indemnification claims against Signature, Mitchell Iron Works, and JG Construction. The Hovnanians argued that any damage sustained by plaintiffs was not caused by their affirmative act but was a result of the active negligence of each third-party defendant, which clearly addressed common-law indemnification (see Trustees of Columbia Univ. v Mitchell/Giurgola Assoc., 109 AD2d 449, 452 [1st Dept 1985]). The record presents issues of fact as to whether Signature, Mitchell Iron Works, and JG Construction were negligent and whether the Hovnanians were not negligent.
The Hovnanians' third-party claims for contribution should not have been dismissed as barred by the economic loss doctrine. CPLR 1401 provides for contribution between two or more people who caused or contributed to the same personal injury, injury to property or wrongful death. The Seymours sustained injury to property allegedly caused by the acts of the Hovnanians or their contractors in the performance of their work renovating the Hovnanians' home. In addition to asserting contract claims against the Hovnanians, plaintiffs also asserted tort and statutory causes of action to recover for the injury to their property (see Mitchell/Giurgola Assoc., 109 AD2d 449, 452; Sound Refrig. & A.C., Inc. v All City Testing & Balancing Corp., 84 AD3d 1349, 1350 [2d Dept 2011]).
The court correctly dismissed plaintiffs' claim for intentional infliction of emotional distress. The court correctly reasoned that although most people would likely consider the alleged conduct deplorable, the Hovnanians' conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (Murphy v American Home Prods. Corp., 58 NY2d 293, 303 [1983]). In any event, the claim was not supported by medical evidence (see Walentas v Johnes, 257 AD2d 352, 353 [1st Dept 1999], lv dismissed 93 NY2d 958 [1999]). To the extent plaintiffs ask us to construe the claim as being for negligent infliction of emotional distress, that does not avail them. "Extreme and outrageous conduct continues to be an essential element of a cause of action alleging negligent infliction of emotional distress" (Xenias v Roosevelt Hosp., 180 AD3d 588, 589 [1st Dept 2020]). In any event, the medical records do not show a causal connection between the Hovnanians' acts and any emotional harm (see Ornstein v New York City Health & Hosps. Corp., 10 NY3d 1, 6 [2008]). The court also correctly concluded that the Hovnanians' conduct does not rise to the level of wanton disregard of plaintiffs' property rights so as to [*7]warrant punitive damages (see Marinaccio v Town of Clarence, 20 NY3d 506 [2013]).
The court erred in granting the Hovnanians' motion to strike plaintiffs' jury demand. The equitable relief sought by plaintiffs was incidental to their demand for money damages (see Greenfield v Philles Record, 243 AD2d 353 [1st Dept 1997]); to the extent plaintiffs seek to compel the Hovnanians to perform certain remediation work, monetary damages will afford full and complete relief (Murphy, 136 AD2d 229, 231-232 [1st Dept 1988], mod 58 NY2d 293 [1983]). Further, the claim for "abatement of and damages for a nuisance" is triable by a jury (CPLR 4101[2]).
We decline GMS's invitation to search the record and grant it summary judgment dismissing the Hovnanians' third-party claims for negligence and common-law
indemnification and Signature's cross claims for contribution and common law indemnification against it. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 
ENTERED: July 26, 2022

Footnotes

Footnote 1:A laylight is "a glazed panel usually set flush with the ceiling for admitting natural or artificial light" (Merriam-Webster Online Dictionary, laylight [https://www.merriam-webster.com/dictionary/laylight]).

Footnote 2:The Landmark Preservation Commission (LPC) issued a Warning Letter, dated October 12, 2012, addressed to Mrs. Hovnanian to cease the illegal "alterations to party wall at roof without permits." Mr. Hovnanian applied for and received a "Certificate of Appropriateness" permit from the LPC on March 15, 2013.

Footnote 3:January 2013 testing showed high levels of lead in the dust in concentrations ranging from double to 18 times the Environmental Protection Agency limit. After a March 2013 remediation, testing in September 2013, and years later in June 2019, continued to show elevated lead in the dust samples.

Footnote 4:Plaintiffs maintain that they incurred costs in connection with renting the month-to-month apartment, but the record does not contain any evidence of that cost. The 2013 lead dust remediation was covered by insurance and the motion court ordered the Hovnanians to pay for the cost of further remediation of the lead dust.