## APMSF Inv. LLC v PM Mezz Buyer LLC

2025 NY Slip Op 32117(U)

June 13, 2025

Supreme Court, New York County

Docket Number: Index No. 650314/2025

Judge: Anar Rathod Patel

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 45

-----------------------------------------------------------------------X

APMSF INVESTOR LLC,                          **INDEX NO.**      650314/2025

                            Plaintiff,       **MOTION**
                                             **DATE**          04/02/2025

          - v -

PM MEZZ BUYER LLC, FIRST AMERICAN           **MOTION SEQ.**
TITLE INSURANCE COMPANY                      **NO.**             001

                            Defendants.       **DECISION + ORDER ON**
                                                    **MOTION**

-----------------------------------------------------------------------X

**HON. ANAR RATHOD PATEL:**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 11–24, 27–36, 40–42, 44, 46 were read on this motion to/for <u>SUMMARY JUDGMENT</u>.

<u>**Relevant Factual and Procedural History**</u>

Plaintiff APMSF Investor LLC ("Plaintiff" or "Seller") moves for summary judgment, pursuant to CPLR § 3212, on its singular cause of action for declaratory judgment that it is entitled to retain a $1 million deposit made by Defendant PM Mezz Buyer LLC ("Defendant" or "Purchaser") under the parties' Mezzanine Note and Option Purchase and Sale Agreement (the "Agreement").  The Motion arises from a failed note purchase transaction for a $275 million mezzanine note secured by an interest in the Parkmerced Project, a multi-phase residential development in San Francisco, California.  NYSCEF Doc. No. 1 ("Compl.") ¶¶ 1–2.

On October 28, 2024, the parties executed the Agreement, pursuant to which Purchaser agreed to acquire a promissory note for a total purchase price of $58 million.  NYSCEF Doc. No. 13 ("Agreement") § 3; NYSCEF Doc. No. 27 ("R. 19-a St.") ¶ 1; NYSCEF Doc. No. 12 (Stanfield Aff.) ¶ 3.  Section 1.1(a) of the Agreement states that Seller was to "sell, assign and transfer to [Purchaser] on an 'as-is', 'where-is' basis, without recourse, representation or warranty, expressed or implied, except the representations and warranties expressly made by [Seller] herein," a certain Promissory Note to a Loan Agreement (the "Note") for a purchase price of $58,000,000 (the "Purchase Price").  R. 19-a St. ¶ 2.  Defendant submits the Affidavit of Manager of PM MEZZ BUYER LLC, Robert Rosania, who avers that the Note was subordinate to a $1.5 billion senior mortgage on the Parkmerced Project and was acknowledged by both parties to be "under water" at the time of the Agreement.  NYSCEF Doc. No. 36 ("Rosania Aff.") ¶¶ 4–5.

In accordance with the Agreement, Purchaser deposited $1 million into escrow as a good faith deposit (the "Deposit"), which the Agreement expressly provided would serve as liquidated

[* 1]

damages in the event Purchaser failed to close the transaction for reasons not attributable to Seller. Agreement § 25(b); R. 19-a St. ¶ 6; Stanfield Aff. ¶¶ 4.

Plaintiff alleges that it fully complied with its obligations under the Agreement and satisfied all conditions precedent to closing. R. 19-a St. ¶¶ 14–15; Stanfield Aff. ¶¶ 6–10. Among other things, Seller delivered all required documentation and executed assignment materials to effectuate the transfer of the Note. Stanfield Aff. ¶¶ 10–11. Seller was ready, willing, and able to close on the scheduled closing date. R. 19-a St. ¶¶ 10, 19; Stanfield Aff. ¶ 6, 10, 16–17. However, Defendant failed to remit the balance of the Purchase Price to the Seller on the closing date. R. 19-a St. ¶ 23; Stanfield Aff. ¶ 17. The Rosania Affidavit concedes that the transaction did not close because a necessary equity investor "failed to materialize." Rosania Aff. ¶ 8.

On December 9, 2024, following the failed closing, Seller made a written demand to Purchaser and the escrow agent terminating the Agreement and for the release of the Deposit to Seller pursuant to the express terms of the Agreement—due to Purchaser's default. R. 19-a St. ¶ 25; Stanfield Aff. ¶ 18. Purchaser, however, refused to authorize the release. R. 19-a St. ¶ 27; Stanfield Aff. ¶ 20.

Plaintiff commenced this action on January 17, 2025, asserting a single cause of action for declaratory judgment that it is entitled to retain the Deposit and directing its release from escrow. Compl. ¶¶ 1, 21–29. Defendant filed its Answer on February 28, 2025, asserting an affirmative defense that Plaintiff transferred interests without consent of Defendant and in a manner that frustrated Defendant's ability to close. NYSCEF Doc. No. 5 ("Answer") ¶ 6. On April 2, 2025, Plaintiff moved for summary judgment pursuant to CPLR § 3212 on its declaratory judgment claim. *See* NYSCEF Doc. No. 11 ("Notice of Mot."); NYSCEF Doc. No. 24 ("Mem. of Law in Supp.").

In opposition, Defendant argues that the liquidated damages clause constitutes an unenforceable penalty and that material questions of fact exist as to whether Plaintiff suffered any actual damages, particularly given that the Note was "under water." *See* NYSCEF Doc. No. 44 ("Mem. of Law in Opp'n") at 4–5; Rosania Aff. ¶¶ 5–7, 11, 13.

On May 23, 2025, Plaintiff filed its Reply, contending that the Deposit represents 1.7% of the agreed purchase price and was not "conspicuously disproportionate" to reasonably anticipated losses, in light of the time, effort, and opportunity cost expended in preparing to close. NYSCEF Doc. No. 46 ("Reply Mem. of Law") at 2, 5, 7. Plaintiff also argues that Defendant failed to rebut Plaintiff's statement of undisputed material facts or submit admissible evidence in support of its affirmative defense. *Id*. at 7–8.

## Discussion

*I. Summary Judgment Standard*

Summary judgment is appropriate where the movant establishes, through admissible evidence, that "there is no genuine issue as to any material fact" and that it is entitled to judgment as a matter of law. *Zuckerman v. City of New York*, 49 N.Y.2d 557, 562 (1980); *Alvarez v. Prospect*

650314/2025  APMSF INVESTOR LLC vs. PM MEZZ BUYER LLC ET AL
Motion No.  001

Page 2 of 6

[* 2]

*Hosp.*, 68 N.Y.2d 320, 324 (1986). The movant must make a *prima facie* showing of entitlement to relief by tendering sufficient evidence to eliminate any material issues of fact from the case. *Winegrad v. N.Y. Univ. Med. Ctr.*, 64 N.Y.2d 851, 853 (1985). Once this showing is made, the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to require a trial of material issues. *Jacobsen v. N.Y. City Health & Hosps. Corp.*, 22 N.Y.3d 824, 833 (2014); *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 763 (2016). Mere conclusions, expressions of hope, or unsubstantiated allegations are insufficient to defeat the motion. *Zuckerman*, 49 N.Y.2d at 562.

## II. Plaintiff is Entitled to Retain the $1 Million Deposit as Valid Liquidated Damages

Plaintiff moves for summary judgment seeking enforcement of Section 25(b) of the Agreement, which provides that in the event Purchaser fails to close "for any reason other than a default by Seller," Seller is entitled to retain the $1 million Deposit as liquidated damages. Plaintiff's entitlement to retain the Deposit turns on whether this provision is enforceable as a matter of law.

It is undisputed that Purchaser failed to close on the transaction. Purchaser concedes that it was unable to proceed because a necessary investor "failed to materialize," not due to any alleged breach or misconduct by Seller. Rosania Aff. ¶ 8. The sole question, therefore, is whether Deposit constitutes a valid liquidated damages clause or is an unenforceable penalty.

The Court of Appeals has long held that liquidated damages clauses are enforceable where: (i) actual damages were difficult to determine at the time of contract execution, and (ii) the amount fixed is not "plainly or grossly disproportionate" to the probable loss. *See Truck Rent–A–Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 425 (1977); *JMD Holding Corp. v. Congress Fin. Corp.*, 4 N.Y.3d 373, 384 (2005).

### A. Damages Were Difficult to Ascertain at the Time of Contracting

The Court finds that actual damages were not readily ascertainable at the time the parties executed the Agreement. The Note had a face value of $275 million, but was subordinated to a $1.5 billion senior mortgage, rendering its recovery prospects as uncertain. As the Rosania Affidavit acknowledges, the Note was "under water" when the contract was signed. Rosania Aff. ¶ 5. The Purchase Price reflected a significant discount from face value and was structured as part of a broader recapitalization plan involving a multi-year extension of the senior loan and a $130 million equity infusion into the Parkmerced Project. Rosania Aff. ¶ 7. Seller expected to complete the transfer of the Note on the terms set forth in the Agreement and represented its ability and readiness to do so. Stanfield Aff. ¶ 7.

In light of these circumstances—including the speculative value of the Note, the absence of a robust secondary market, and the unique financing conditions surrounding the Project—the parties expressly acknowledged the difficulty of calculating damages in the event of breach. Section 25(b) of the Agreement provides that the parties "understood and agreed that it is difficult to estimate or otherwise determine the total amount of damages that would be incurred by Seller should Purchaser default in its obligations under this Agreement."

650314/2025   APMSF INVESTOR LLC vs. PM MEZZ BUYER LLC ET AL                    Page 3 of 6
    Motion No.  001

3 of 6

This acknowledgment of uncertainty and pre-agreed damages allocation supports the enforceability of the clause. Under New York law, "[a] contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation." *JMD Holding Corp. v. Congress Fin. Corp.*, 4 N.Y.3d 373, 380 (2005) (quoting *Truck Rent–A–Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 425 (1977)). Moreover, the burden rests on the party challenging the provision to show that the amount fixed is, in fact, a penalty. *JMD Holding*, 4 N.Y.3d at 380–81. Here, the speculative nature of Plaintiff's loss—stemming from reputational exposure, prolonged asset illiquidity, and lost opportunity costs—justified the parties' *ex ante* agreement to liquidated damages.

### B. The Deposit is Reasonable and Not Disproportionate to Probable Loss

The liquidated damages sum at issue of $1 million represents approximately 1.7% of the $58 million Purchase Price and approximately 0.4% of the face value of the underlying Note. Reply Mem. of Law at 2. This amount falls well within the range that New York courts have routinely upheld. *See JMD Holding*, 4 N.Y.3d at 383–85 (upholding liquidated damages of 1–2% of a $40 million credit facility).

Defendant does not substantiate that a liquidated damages clause equal to 1.7% of the contract price is presumptively unenforceable, and its reliance on *Trustees of Columbia Univ. v. D'Agostino Supermarkets, Inc.*, 36 N.Y.3d 69 (2020), and *Atlantis Mgt. Group II LLC v. Nabe*, 216 A.D.3d 526 (1st Dept. 2023), is misplaced. In *Trustees*, the Court of Appeals invalidated a clause that reinstated over $1 million in rent obligations—more than seven times the amount due under the parties' surrender agreement—upon a minor delay in payment, finding it to be grossly disproportionate and punitive. 36 N.Y.3d at 75–76. In *Atlantis*, the First Department struck a provision that compelled the forfeiture of ownership interests for $1.00 upon any breach of an operating agreement, regardless of materiality, and held it to be an unenforceable penalty. 216 A.D.3d at 526–27.

By contrast, Section 25(b) applies only in the event of a material failure to close, and fixes liquidated damages at $1 million, which is approximately 1.7% of the Purchase Price. The clause expressly acknowledges that the damages resulting from a failed closing would be difficult to quantify. *See* Agreement § 25(b); Reply Mem. of Law at 4–5. This clause is tailored to a specific breach, is proportionate to the anticipated harm, and stands in stark contrast to the blanket penalty provisions at issue in *Trustees* and *Atlantis*.

The Court also finds significant that the parties are sophisticated commercial entities, represented by counsel, and that the Agreement was negotiated at arm's length. Such circumstances warrant judicial deference to the parties' liquidated damages provision. *See Addressing Sys. & Prods., Inc. v. Friedman*, 59 A.D.3d 359, 360 (1st Dept. 2009) ("A liquidated damages provision which is reached at arm's length is entitled to deference.").

Defendant's argument that the Note was "worthless" is immaterial. Under New York law, the enforceability of a liquidated damages clause is assessed at the time of contracting—not in hindsight. *See Truck Rent–A–Ctr.*, 41 N.Y.2d at 425 (holding that enforceability of a liquidated

650314/2025   APMSF INVESTOR LLC vs. PM MEZZ BUYER LLC ET AL                    **Page 4 of 6**
Motion No.  001

[* 4]                                                    4 of 6

damages provision depends on whether the amount bears a reasonable relation to the probable loss and whether actual damages were difficult to estimate at the time of contracting).  At the time of execution, both parties recognized the speculative nature of the Note and the broader economic stakes involved in the transaction, which was tied to a $130 million capital infusion and the restructuring of a $1.5 billion senior mortgage.

Accordingly, the Court concludes that Section 25(b) of the Agreement constitutes an enforceable liquidated damages clause.

### III. Defendant Fails to Raise Any Triable Issue of Material Fact

Defendant's opposition fails to raise any genuine issue of material fact sufficient to defeat summary judgment under CPLR § 3212.  In fact, Defendants do not dispute that Plaintiff satisfied the two conditions precedent on or before the closing date, and that Defendant failed to remit the balance of the Purchase Price on the Note through no fault of Plaintiff Seller.

Defendant's contention that there are "issues of fact as to the actual value of the Mezz Note" is without merit. Rosania Aff. ¶ 13.  The Agreement expressly disclaims any representations or warranties as to the collectability or value of the Note, and provides that Purchaser accepted the asset on an "AS IS…WHERE IS" basis.  Agreement § 4.2.  Such disclaimers are enforceable under New York law and preclude defenses based on the post-closing condition or valuation of the asset. *See Ashwood Capital, Inc. v. OTG Mgmt., Inc.,* 99 A.D.3d 1, 11 (1st Dept. 2012) (courts will enforce clear contractual disclaimers, including "as is" clauses, that negate reliance on alleged misrepresentations).

Moreover, Defendant's own submissions confirm that the Note was purchased with full awareness of its distressed condition and for strategic purposes beyond direct asset recovery. *See* Rosania Aff. ¶¶ 5–7.  The Purchaser's goal was to facilitate a senior loan extension and trigger an infusion of new capital.  Given these complex and speculative objectives, the risk of non-performance was precisely the kind of harm the parties intended to allocate by agreeing in advance to liquidated damages.

As addressed above, the Deposit constitutes a reasonable and proportionate estimate of potential harm.  Defendant offers no admissible evidence raising a material issue of fact that the amount is "plainly or grossly disproportionate" to probable loss.  *See JMD Holding*, 4 N.Y.3d at 383; *Truck Rent–A–Ctr.*, 41 N.Y.2d at 425.  The burden to make that showing rests with the party challenging the clause, and Defendant has not met it.

Accordingly, Defendant has failed to raise any triable issue of fact as to the enforceability of the liquidated damages clause or its liability under the Agreement.

### IV. Defendant's Affirmative is Abandoned

Defendant's Answer asserts a single affirmative defense, alleging in conclusory terms that Plaintiff "frustrated and interfered with Defendant's ability to structure a closing."  Answer ¶ 6.

650314/2025  APMSF INVESTOR LLC vs. PM MEZZ BUYER LLC ET AL Page 5 of 6
Motion No.  001

5 of 6

Defendant, however, offers no evidence, documentary or testimonial, to support that assertion, and does not raise or defend this theory in opposition to the instant motion.

To the contrary, Defendant affirmatively concedes that its failure to close was caused by external financing issues—specifically, that an investor "failed to materialize" prior to closing. Rosania Aff. ¶ 8. Defendant does not allege, nor does the record reflect, that Plaintiff engaged in any conduct that interfered with closing or otherwise rendered performance under the Agreement impracticable or its purpose frustrated.

Where, as here, an affirmative defense is neither supported by admissible evidence nor defended in opposition briefing, it is deemed abandoned. *See Goodman v. IEH Auto Parts, LLC*, 211 A.D.3d 468, 469 (1st Dept. 2022) (affirming summary judgment where defendants "failed to present evidence to support the affirmative defense that plaintiff's culpable conduct caused or contributed to the accident").

The Court has considered the parties' remaining contentions and find them to be unavailing.

Accordingly, it is hereby:

**ORDERED** that Plaintiff's Motion for Summary Judgment (Motion Sequence No. 001) is GRANTED; and it is further

**ORDERED** that Plaintiff APMSF INVESTOR LLC is entitled to retain the full $1,000,000 deposit, together with any accrued interest thereon, as liquidated damages pursuant to Section 25(b) of the parties' Agreement; and it is further

**ORDERED** that, within ten (10) days of service of a copy of this Decision and Order with Notice of Entry, Defendant PM MEZZ BUYER LLC shall take all steps necessary to effectuate the release of the escrowed funds to Plaintiff; and it is further

**ORDERED** that, upon submission of a copy of this Decision and Order with Notice of Entry, the Clerk is directed to enter judgment accordingly and mark this action disposed.

| June 13, 2025 | | | | A.R. Patel |
| --- | --- | --- | --- | --- |
| **DATE** | | | | **ANAR RATHOD PATEL, A.J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- | --- |
| | X | GRANTED | | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

650314/2025   APMSF INVESTOR LLC vs. PM MEZZ BUYER LLC ET AL          Page 6 of 6
Motion No.  001

6 of 6

[* 6]